The answer admitted the killing, but denied the charges of negligence and liability for damages, and set up the defense (1) that deceased negligently walked on defendant's track, and though defendant used every precaution and gave every necessary signal to alarm deceased and cause him to leave the track, he paid no attention to the same, and was unavoidably run over and killed by defendant's engine; (2) that deceased contributed to his own death by his own negligence by getting on the track near to the engine while the engine was in rapid motion, and without attempting to observe its approach, or looking, or listening, and negligently remaining upon the track until the engine ran over him, and that he lost his life by his own want of ordinary care and prudence.
On the trial, T. A. Bowen, a witness for plaintiff, testified: "Live in the country; work in Raleigh; I came in town by railroad track; defendant's track is generally used as a walkway; I have been living where I now live six years; great deal of walking done by the public on defendant's track leading out of Raleigh to the west. The North Carolina *Page 410 
Railroad track and the Raleigh and Augusta Air Line track are eight or ten feet apart; ties project about eighteen inches further; there is a ditch on side of track and embankment runs up; same on both sides; no pathway on either side of the tracks. The tracks of both roads are on one bed; Boylan's bridge spans both roads — the North Carolina and the Raleigh and Augusta; the two tracks diverge going east after passing under the bridge. The deceased was killed forty or fifty yards west of the bridge; I saw the deceased when he was killed; the defendant's engine was coming from the North Carolina Railroad depot, going west — the tender was ahead and engine backing; Roberson, the (560) deceased, was going west; he had a bucket on his left arm. When Roberson was struck there was a freight train on the Raleigh and Augusta track passing along by the side of the deceased; I was fifty yards west of the deceased; I was coming to Raleigh, going east; deceased was going west. The engine of the Raleigh and Augusta freight train was off against me going west when deceased was struck; Raleigh and Augusta train had fourteen or fifteen cars, don't know exactly how many. I saw Roberson's face; it was towards me; he was walking briskly up the road towards me; the Raleigh and Augusta freight train was making considerable noise; when the engine and tender of defendant struck deceased it passed over him and came nearly to a stop about thirty yards from deceased. You can't see the Raleigh and Augusta train from up the road until it comes under the bridge; when I first saw defendant's engine and tender it was east of the bridge; from where engine and tender was when I first saw it a man could see to where I was; the deceased was between me and the said engine. Don't think a person can see all the way to North Carolina Railroad depot from bridge; distance from bridge to depot 300 to 400 yards. A person on an engine on North Carolina road, situated half-way between depot and said bridge, can see to and under said bridge. It is possible to see a freight train from the Richmond and Danville depot from Hargett Street station to bridge. When I first saw Richmond and Danville engine and tender it was thirty-five or forty yards from deceased and had just got to bridge; from this point to where deceased was is open and straight, and Roberson could have been seen perfectly plain. The Raleigh and Augusta train was passing by deceased when Richmond and Danville engine struck deceased; the Raleigh and Augusta train had, about half of it, passed deceased; the freight train and engine and tender were running neck and neck. I waved my hand once or twice to deceased; he did not pay any attention to it. I don't know whether (561) deceased stepped over from Raleigh and Augusta track or not; I heard the whistle of Richmond and Danville engine very plainly, and deceased was between me and engine; I motioned several times to *Page 411 
deceased to get out of way and he did not do so. There was plenty of room on the outside of Richmond and Danville or of North Carolina track for deceased to have stepped off; there was room on side of embankment and in the ditch, which was two feet deep; I stepped in ditch and was not hurt; engine passed me before it stopped; I was on same track as Roberson. If deceased had been on Raleigh and Augusta track there was room on outside of that track for deceased to have stepped off and saved himself. I heard whistle of engine of defendant blow twice, plainly; engine had been slowed down before it struck deceased, because it stopped about thirty yards after it passed him and after it passed me. Buck Howell was on same track between me and Roberson; when engine blew Howell also got off track and so did I; deceased did not; both of us were farther from Richmond and Danville or North Carolina engine than deceased. At the time Richmond and Danville engine blew, the Raleigh and Augusta engine was just about up in front of me; the train was passing Howell and also deceased."
George Davis: "Live in fourth ward of Raleigh; Roberson was killed about 6:30 a.m. on 9 October, 1891; I was ahead of him going west on North Carolina track; I saw freight train on Raleigh and Augusta track; was about 170 feet ahead of Roberson; did not see deceased when he got on track or when he was killed; I was going on up the road west; the Raleigh and Augusta train was going west. I heard engine on North Carolina track blow three times; it was then going west, I looked back and saw nothing between me and the engine; I thought it was blowing for me to get off; I was right smart distance ahead of North Carolina engine. I am certain I saw no one between me and that engine; I stepped off on outside in ditch and engine passed me; I got (562) on track again and looked back and saw something on track; it was Thomas Roberson, dead; his whole body was between the rails; there was a hole in his head and his foot cut off; his head was towards the east. The engine on the North Carolina Railroad did not stop; as it passed me it was running fast — thirty to thirty-five miles an hour; the shifting engine on the North Carolina track was going faster than Raleigh and Augusta freight train. When I started on the track Thomas Roberson got on the track behind me and I started in same direction that he did. From Boylan's bridge and one hundred yards east of it a person could see straight ahead to Cox Avenue, nearly three-fourths of a mile. There was room on outside of North Carolina track to get off in ditch, just as I did. When I heard engine blow on North Carolina track the train on Raleigh and Augusta track was passing me, and the engine of that train had got beyond me going west.
Cross-examination. — The freight was running pretty fast — can't exactly say how fast it was running — about fifteen miles an hour; I met *Page 412 
two men coming towards city walking in ditch, one behind the other; they were thirty yards from bridge west; the engine on the Raleigh and Augusta track was pulling fourteen cars and was coming under bridge when I first saw it; it was exhausting very heavily; did not see Richmond and Danville engine when I first saw Air-Line train; I looked back to see if Raleigh and Augusta train was on track I was on; I saw a man on the track behind me; I had got only a few steps before Raleigh and Augusta engine passed me; it was good daylight; could see very plainly; the engine on North Carolina road was not far from the bridge when I heard it blow; it had just passed under bridge going west and then blew not far from the bridge."
The defendants introduced the following evidence:
A. F. Fowler: "I am a shifting engineer on the Richmond and (563) Danville Railroad. On 9 October, 1891, when the man Roberson was killed, I had started out from depot for lantern lights on switch-targets; I did not stop until I passed over deceased; at Boylan's bridge I first saw deceased; he was not on our track, he was coming from Raleigh and Augusta track and got on ours; he was going west and got on under bridge. As soon as I saw him get on track I told the fireman to ring the bell, he did so; I blew whistle, short, sharp blows — the danger signal; as soon as I saw he did not notice signal I reversed engine at once the risk of bursting out cylinder; I threw steam on the reverse to stop the quicker, and applied the brakes. When he first got on the track I did not stop engine because I supposed he would obey signal and get off as I blew and rang bell; as soon as I saw he did not notice signal I used every appliance to stop. The engine came nearly to a stop just after passing over body after running about the length of the engine. After I saw I had passed over body I went on and got switch-lights and came back for body; I was going twelve miles per hour when I reversed; I got to body and laid it one side and sent for coroner.
Cross-examination. — I am still employed by the Richmond and Danville Railroad; I was looking the way I was going (witness showed how he was sitting, with face towards the side, and leaning back out of window, in which position he could readily see in the direction the engine was going), and was sitting on my seat; my body was facing towards engine and I looked out window with head out looking west, the direction I was going, and my hand on throttle. I don't know whether seat is higher than tender or not; I was about thirty yards from bridge when the engine of the Raleigh and Augusta train went under bridge. The deceased had just then stepped upon our track, and I then blew, and fireman rang bell. Our freight train from Greensboro was due at 6:45 or 6:47 a.m. I suppose I was thirty yards from deceased when I (564) commenced blowing whistle; when I first saw deceased, he was *Page 413 
about fifty yards off, coming from Raleigh and Augusta track where it comes away from our track; the deceased could have seen my engine and which way it was going before he got on our track; he must have been about twenty yards from our track. It requires about twenty-five or thirty yards to stop my engine; I blew whistle as soon as he got on our track, and continued to blow; I had fifteen minutes to go and get switch-lights and get back before our freight was due; this was plenty of time. Raleigh and Augusta train went on; I never did pass it. The body was about twenty-five yards from bridge when struck, I think; it was about thirty yards from bridge when we got hold of body; it was about twenty-five yards from bridge east when I first saw deceased, and blew, and rang bell; I did not stop at first, but blew and rang bell. As soon as I saw that deceased did not notice this, I had got nearer him, about twenty yards or so from him, can't tell exactly; then I reversed engine and applied brakes; the engine passed nearly over the body before coming to a stop; I saw the man had been struck before I could stop. I started up to get lights, as ordered, before freight could get there, and I came back at once, and removed the body. If deceased had stopped under the bridge, between the two tracks, there was plenty of room, and he would not have been hurt."
Upon the conclusion of the evidence his Honor intimated that he would charge the jury that, upon the whole evidence, there was no view of it in which plaintiff would be entitled to recover. Upon which intimation the plaintiff submitted to a nonsuit, and appealed.
Counsel for plaintiff did not contend that the intestate was deficient in any of his senses, or wanting in physical (565) power or mental faculties, and if they had there would have been no evidence to support the contention. A priori, the engineer had no reason to think him other than a man possessed of all of the usual powers of mind and body, and was warranted in assuming that he would step off the track and avoid a collision, until it was too late to save him.McAdoo v. R. R., 105 N.C. 145; High v. R. R., 112 N.C. 385. When a person is injured while walking on a railroad track by an engine that he might have seen by looking, the law, as a rule, imputes the injury to his own negligence. Meredith v. R. R., 108 N.C. 616; Norwood v.R. R., 111 N.C. 236. There being no testimony tending to bring this case within any exception to the general rule, we are of the opinion that there was no evidence of want of ordinary care on the part of the defendant, while, in any aspect of the case, the plaintiff's intestate was *Page 414 
negligent in getting upon the track in front of the engine without looking, and exposing his person to injury, when he might have seen that it was approaching and have avoided the collision by stepping off the track.
We cannot yield to the ingenious suggestion of the able counsel for the plaintiff that the engineer must have seen the long freight train and known the fact that the engine was "exhausting heavily," so as to render intestate so insensible to the approach of the other train as if he had been deaf, and that therefore the defendant's engineer was negligent in not attempting earlier to stop the engine. But it was the duty of intestate to look, as well as listen, under the circumstances, and he was negligent if he failed to use his eyes as well as his ears. McAdoo's case,supra. On the other hand, the engineer was justified in assuming that intestate had looked, had notice of his approach, and would clear the track in ample time to save himself from harm. Even when a (566) railroad company violates a statute or an ordinance by running at a given rate of speed in a town or city, negligence will not be presumed in all cases. 2 Wood R. R., 1097, and note. But in our case there was no evidence of the existence of a town ordinance, nor was any statute forbidding such running cited by counsel. And, no matter what the speed of the engine may have been, it did not appear that the accident occurred in a populous part of the city, or where there was at the time, or usually, such a number of persons using the track that an individual walking upon it would not be able readily to see a moving train, or that all who used it as a footway could not secure their safety by stepping off of the track. On the contrary, the undisputed evidence is that the plaintiff's intestate had but to step to the ditch to place himself beyond the pale of danger, whether he was walking on the Raleigh and Augusta Railroad track or that of the North Carolina Railroad.
We think that the judgment should be
Affirmed.
Cited: Neal v. R. R., 126 N.C. 638, 645; Bessent v. R. R., 132 N.C. 941;Pharr v. R. R., 133 N.C. 614; Crenshaw v. R. R., 144 N.C. 322,323; Beach v. R. R., 148 N.C. 165, 166; Exum v. R. R., 154 N.C. 411;Patterson v. Power Co., 160 N.C. 580; Talley v. R. R., 163 N.C. 577;Abernathy v. R. R., 164 N.C. 95; Ward v. R. R., 167 N.C. 151, 154;Davis v. R. R., 170 N.C. 586; Horne v. R. R., ib., 656; McMullan v. R.R., 172 N.C. 855. *Page 415