## LASSITER v. RALEIGH AND GASTON RAILROAD COMPANY.

(Filed October 27, 1903.)

1. NEGLIGENCE—*Contributory Negligence—Railroads.*

> A conductor in charge of a freight train in a railroad yard, who, while giving instructions for the movement of his train, steps on a side track without looking for other trains, is guilty of contributory negligence.

2. NEGLIGENCE—*Proximate Cause—Contributory Negligence—Master and Servant—Questions for Jury.*

> In an action against a railroad company for the death of a freight conductor, killed by being run over by a shifting engine, the question whether the company's failure to have a watchman on the cars attached to the engine was the proximate cause of the accident is, under the evidence, for the jury.

ACTION by A. Lassiter, administrator of A. E. Lassiter, against the Raleigh and Gaston Railroad Company, heard by Judge *H. R. Bryan* at February Term, 1903, of the Superior Court of WAKE County. From a judgment for the defendant the plaintiff appealed.

*Battle & Mordecai* and *N. Y. Gulley,* for the plaintiff.
*Day & Bell* and *T. B. Womack,* for the defendant.

MONTGOMERY, J. The plaintiff's intestate, A. C. Lassiter, a freight conductor in the defendant's service, was standing between the main track and a side track in the defendant's yard in the town of Henderson, giving instructions to the hands on the top of the box cars as to the movements of his train. The train of which he was in charge was on the main track and backing towards him. He was looking at it as he gave the signals to the hands. On the side track a shifting

engine with two box cars attached was moving backwards at the rate of about four miles an hour in the direction of the intestate, his back being turned to the shifting engine. When the box cars attached to the shifting engine were within about twenty steps of the intestate he stepped from a safe place between the track upon the side track, with his back towards the shifting engine, and when engaged in giving orders to the men on the top of the box cars of his own train he was run over and killed by the box cars attached to the shifting engine. A person, Henry Thomason, who chanced to be passing by, endeavored to attract the attention of the intestate, by hallooing, to his peril, but to no avail. There was no watchman on the box cars of the shifting engine. The engineer, from his cab, could not have seen the deceased on the side track. There was no evidence that the bell was not ringing, nor any that the whistle was not sounding. The evidence was to the above effect, and we have recited it as true for the present case, for the plaintiff was non-suited, on the motion of the defendant, because his Honor deemed it insufficient to go to the jury on the question of the defendant's negligence.

We have no case in our Reports where the facts are similar to those in this case. In *Smith v. Railroad,* 131 N. C., 616, the plaintiff was employed by the defendant company to paint targets very near the defendant's track, and was injured by a shifting engine. Smith placed the paint bucket between the rail and his feet, and in the act of a second stooping over to dip his brush in the paint his head was stricken by a passing engine. The track was perfectly straight for six hundred feet and there was no obstruction of Smith's vision. The jury found there was no signal given, by bell or whistle. The Court said there that the engineer had a right to assume that the plaintiff would step out of danger if he had, peradventure, gotten too near the track, or that he would not put his head in danger by leaning over to dip his brush in the paint as the

engine was passing by. In that case neither the speed at which the engine was running nor the rules of the defendant company in reference to the notices and signals to be given by its engineers to persons at work on its tracks were considered, for they were not of importance in the trial as it was conducted in the Court below. When the case was before this Court again at February Term, 1903 (132 N. C., 819), it appeared from the then constituted case that the engine which struck Smith, the plaintiff, was moving at a rate of speed prohibited by city ordinance, and that the rules of the defendant company requiring the ringing of the bell or the sounding of the whistle to give notice to employees at work on the track were also introduced and formed an important part of the trial and case. In the case as last reported the Court held that the violation of the rules of the company and the rapid rate of speed of the engine were competent evidence to go to the jury to show negligence on the part of the defendant; and, in addition, it is also true that the Court cited numerous cases in which it was held that an employee of a railroad at work on its tracks had a right, outside of the rules of the company, to expect that engineers would keep a lookout and give proper signals of the approach of trains to prevent injury to workmen so engaged, and that the engineers should give such signals; and that may be considered as having been held by this Court to be the law in such cases. But that is not the case before us. Lassiter, the intestate, was not employed by the defendant to do work upon its track. He was, as we have said, a freight conductor, and he had a safe place in which to do his work. He, however, left that place and put himself in one of peril, and in doing that he was guilty of contributory negligence, and the plaintiff cannot recover in this action unless the defendant was also negligent and had the last clear chance to avoid the injury.

Was there any evidence of negligence on the part of the

defendant? If so, then his Honor was in error in granting the judgment of non-suit, unless it was perfectly evident that after the intestate stepped upon the track the defendant could not have stopped the train in time to prevent the injury, or have given warning to the intestate, through a flagman or watchman, by which he could have stepped off the track. It cannot be said that the time was too short, as matter of law, and if there was any evidence to show negligence on the part of defendant it should have been left to the jury as to whether or not the defendant had the last clear chance to avoid the killing of the intestate by keeping a proper look-out, notwithstanding the negligence of the intestate. We think there was evidence that ought to have been submitted to the jury as to whether or not the defendant was negligent. There was no watchman or flagman on the box cars of the shifting engine, or anywhere else, to give notice to the engineer of the peril of the intestate, and there was evidence that the engineer himself could not see the intestate on the side track.

It is the duty of railroad companies to keep a reasonable look-out on moving trains. When Thomason saw the intestate step upon the side track the end of the box car attached to the shifting engine was twenty steps from him and the cars were moving at the rate of four miles an hour. The same witness said that the intestate had time to have gotten off if he had heard the witness when he hallooed to him. That evidence was competent and fit to have been submitted to the jury upon the question of the last clear chance of the defendant—that is, whether if both the plaintiff and the defendant had been negligent the defendant could have prevented the death of the intestate by the use of means at hand or that reasonably ought to have been at hand. In *Pickett v. Railroad,* 117 N. C., 616; 53 Am. St. Rep., 611; 30 L. R. A., 257, the Court said: "If it is a settled law of North Carolina (as we have shown) that it is the duty of an engineer on a moving

train to maintain a reasonable vigilant outlook along the track in his front, then the failure to do so is the omission of a legal duty. If, by the performance of that duty, an accident might have been averted, notwithstanding the previous negligence of another, then, under the doctrine of *Davies v. Mann* and *Gunter v. Wicker,* the breach of duty was the proximate cause of any injury growing out of such accident, and when it is a proximate cause the company is liable to respond in damages. Having adopted the principle that one whose duty it is to see does see, we must follow it to its logical results. In *Arrowood v. Railroad,* 126 N. C., 629, the Court said: "The duty of keeping a look-out is on the defendant. If it can keep a proper look-out by means of the engineer alone, well and good. If for any reason a proper look-out cannot be kept without the aid of a fireman, he also should be used. If by reason of their duties either the fireman or the engineer, or both, are so hindered that a proper look-out cannot be kept, then it is the duty of the defendant at such places on its road to have a third man employed for that indispensable duty." The same doctrine was announced in *Jeffries v. Railroad,* 129 N. C., 236; *Bradley v. Railroad,* 126 N. C., 741, and *Pharr v. Railroad,* 119 N. C., 756.

In the present case it was of the utmost importance for the defendant to have kept a look-out other than that which the engineer ordinarily might keep, for the engineer here could not see in front of him by reason of the box cars, although the track was straight for some distance, and the view, but for the box cars, unobstructed. In *Purnell v. Railroad,* 122 N. C., 832, where the engine was pushing backwards a train of box cars, this Court said: "As we understand the matter, there must be both a man and a light at night, and a man and a flag in the day. * * * This man, called a flagman, is in control of this backing train. The train is moved and stopped at his discretion. This is done in the day-time by

the use of a flag, and at night by the use of ·the light. By these means he informs the man in control of the engine when and how to move the train."

The facts of this case do not bring it within the ruling made in *McAdoo v. Railroad,* 105 N. C., 140; *Meredith v. Railroad,* 108 N. C., 616; *Neal v. Railroad,* 126 N. C., 634, 49 L. R. A., 684, that it is not negligence in a railroad company, when its train runs over a man walking on the railroad track apparently in possession of his faculties, and in the absence of any reason to suppose that he was not. The reason of that rule is put upon the ground that the engineer may reasonably suppose that the man will step off in time to prevent injury. In this case the intestate, according to the evidence of Thomason, was at a disadvantage, was not upon equal opportunities with the defendant to avoid the injury, for his manner and conduct showed that he was oblivious to his surroundings and was engrossed in the management of his train and its hands. His actions showed that he did not hear the bell ringing. Now, if there had been on the backing box car a flagman, watchman, he would have seen the intestate's obvious absorption in his work and heard the efforts of Thomason to give him warning. The condition of the intestate was as helpless as if he had been asleep or drunk on the track, and the defendant owed him at least as high a duty as if he had been asleep or drunk.

Error.

DOUGLAS and WALKER, JJ., concur in result only.