MARTHA TALLEY, ADMINISTRATRIX, v. SOUTHERN RAILWAY COMPANY.

(Filed 19 November, 1913.)

1. **Railroads—Pedestrians—Danger—Presumption.**

While an engineer on a moving railroad train, who sees a man walking on the track in apparent possession of his strength and faculties, and without information to the contrary, is not required to stop his train or slacken his speed, under the presumption that the pedestrian will leave the track in time to save himself from injury, it is ordinarily where the pedestrian is on the same track on which the train is then running and the circumstances call for alertness or attention on the part of the pedestrian, and does not apply to the peculiar facts of this case.

2. .**Same—Negligence—Proximate Cause—Sidings—Defective Switch —Stopping Trains—Trials—Evidence—Questions for Jury.**

Where a pedestrian on a railroad track is killed on a sidetrack of a railroad company, leading off from its main line, near a station in a town, and there is evidence tending to show that the train which ran over him, running at a high rate of speed, was a train which for seven years had not taken this siding, and was

TALLEY *v.* R. R.

running near its schedule time, and both the custom and schedule were known to the intestate; that the tracks at this place were customarily used by pedestrians; that upon hearing the warning it gave of its approach to the station, the pedestrian crossed over to the side-track, where he was killed; that the switch to the side-track showed from its red signal that it had been turned, which could have been seen by the engineer 200 feet ahead and have afforded ample time within which to have stopped the train and avoided the injury: *Held,* the case was one for the determination of the jury on the question whether there had been negligence on the part of the company or its employees in regard to the defective switch or in the failure to get the train sooner under control, and whether such negligence, if established, was the proximate cause of the injury.

### 3. Same—Contributory Negligence—Nonsuit.

While a pedestrian before going on a railroad track is required to look and listen for approaching trains, and observe a proper degree of care for his safety in doing so, this obligation may be so qualified by facts and attendant circumstances that the question of contributory negligence must be referred to the jury, when he has therein failed; and under the peculiar facts and circumstances of this case it is held that a motion as of nonsuit upon the evidence should not have been granted, there being evidence tending to show that the intestate was killed on a side-track by a train, running on schedule time, which had not for seven years taken this siding, by reason of the switch having been unexpectedly turned, and that the deceased had gone from the main track upon the siding, on hearing the approach of the train, and was walking there with his back to it when he was killed, and that it was raining and he was carrying an umbrella, the evidence tending to show that the schedule of this train and the custom not to enter on this side-track were known to the intestate.

WALKER, J., dissenting; BROWN, J., concurring in the dissenting opinion.

APPEAL by plaintiff from *Cooke, J.;* at June Term, 1913, of ROCKINGHAM.

Civil action to recover damages for alleged negligent killing of plaintiff's intestate. At the close of testimony, on motion, there was judgment of nonsuit. Plaintiff excepted and appealed.

*C. O. McMichael and P. W. Glidewell for plaintiff.*
*Manly, Hendren & Womble for defendant.*

HOKE, J.   There was evidence on the part of plaintiff tending to show that on 22 April, 1912, the intestate, living about one mile south of Pelham, a station on the Southern Railway, started to that place to mail a letter.   That defendant company had two tracks at Pelham running practically north and south, a main track and a siding or pass track, the main track being on the east or right side going north.   That there was a walkway along the right of the main track, there being a low fill there, and pedestrians in that vicinity going to Pelham were accustomed to use this walkway and also the main and side tracks, particularly in rainy weather; that it was about the schedule time for the arrival of No. 44, a passenger train going north, and the train had given the station signal some distance out when intestate, who had been walking along the path with a raised umbrella over him, it being then raining, was seen to cross the main track and continue his way along the side or pass track, when the train entered on the siding at a speed of from 40 to 50 miles an hour and ran over and killed him.

D. O. Ledbetter, a telegraph operator whose office was in the blockhouse of the company, testified that this train was not "due to go on the side-track" at that place, and had never done so in the six or seven years that the witness had been employed at that station.   It was also admitted on the argument that the intestate was aware of the schedule time of this train and of the custom not to take the siding.   There was also evidence tending to show that the switch lock had been tampered with and the switch wrongfully thrown or changed in some way, and that the signal target gave indication of this to the approaching train by showing the red signals, and they could have been seen by the engineer for 300 or 400 feet before reaching the switch, and it was 1,028 feet from the switch to the point on the siding where the intestate was struck and killed.   That if the intestate had looked around, he could have seen when the train entered the siding.

There seems to have been no direct evidence on plaintiff's part as to the distance within which this train could have been stopped. A witness for defendant testified that the train was not going over 40 miles an hour, which was about the schedule time for that place, and he did not think it could have been stopped under 1,000 feet. There was evidence on the part of the defendant that the train in question was going 50 to 60 miles an hour, and making up some lost time. That the engineer on seeing the red lights at the switch, which he did some 200 feet back, immediately put on the emergency brakes and did what he could to get the train under control, and that under conditions presented, "a stop in 2,000 feet would have been a good one."

This evidence, however, coming from defendant's witnesses, in so far as it tends to excuse the company, may not be allowed effect in the present appeal, and under the well established rule that only the evidence tending to support the plaintiff's claim may be considered, we are of opinion that the cause should have been submitted to the jury.

True, we have held in many well considered cases that the engineer of a moving train who sees, on the track ahead, a pedestrian who is alive and in the apparent possession of his strength and faculties, the engineer not having information to the contrary, is not required to stop his train or even slacken its speed because of such person's presence on the track. Under the conditions suggested, the engineer may act on the assumption that the pedestrian will use his faculties for his own protection and will leave the track in time to save himself from injury. But this is ordinarily where the person ahead is on the same track and the conditions call for alertness or attention on his part, as in the case of Exum v. R. R., 154 N. C., 408, and in Beach v. R. R., 148 N. C., 153; and neither the decisions in question nor the principle on which they rest necessarily apply when, as in this case, a regular passenger train, scheduled to the contrary and by reason of a defective switch, unexpectedly runs at a high rate of speed onto a siding where people of the vicinity have been accustomed to walk and a collision of some kind is not unlikely to occur.

These conditions, if established, call for a different ruling, and in such case the issue as to the defendant's conduct must be referred to the jury on the question whether there has been negligence on the part of the company or its employees in regard to the defective switch or in the failure to get the train sooner under control, and whether such negligence, if it existed, was the proximate cause of the injury complained of.

And in reference to the conduct of the intestate usually considered and passed upon on the issue as to contributory negligence, while it has been repeatedly held with us that a pedestrian on a railroad track is required to look and listen and be properly attentive to his own safety, and if injured by reason of negligent default in this respect, recovery is barred on account of his own negligent conduct, it is also well recognized that the position does not always nor universally obtain as a conclusion of law, and that the obligation to look and listen, etc., may be so qualified by facts and attendant circumstances that the question of contributory negligence must also be referred to the jury, a principle applied by the Court in *Hammett v. R. R.*, 157 N. C., 322; *Snipes v. Manufacturing Co.*, 152 N. C., 42; *Farris v. R. R.*, 151 N. C., 483; *Hudson v. R. R.*, 142 N. C., 198; *Ray v. R. R.*, 141 N. C., 84; *Sherrill v. R. R.*, 140 N. C., 252; *Lassiter v. R. R.*, 133 N. C., 244; *Purnell v. R. R.*, 122 N. C., 832; *Stanly's case*, 120 N. C., 514.

In *Ray's case* the plaintiff, who had alighted from a train, was going across the railroad yard towards the depot, walking between the tracks. Seeing another train approaching from an opposite direction, to avoid a collision, he stepped onto a parallel track and was struck by a train negligently backing into the yard, the one on which he had come. Held, a question of contributory negligence for the jury.

In *Sherrill's case, supra,* plaintiff was superintending the construction of a depot where two roads crossed, and was standing on the track of one road overlooking the work. At the time he took this position there was a train of the other road on the crossing some distance away. While plaintiff stood there, the train having passed out, he was run on and injured by a train of this road which had approached without signal or other

warning. The Court decided that the cause was one for the jury, and in this connection it was held:

"1. One who enters on a public railroad ·crossing is required to look and listen, and when he fails in this duty and is injured in consequence, the view being unobstructed, under ordinary conditions such person is guilty of contributory negligence."

"2. Negligence having first been established, facts and attendant circumstances may so qualify the obligation to look and listen as to require·the question of contributory negligence to be submitted to the jury, and in some instances the·obligation to look and listen may be altogether removed."

In *Lassiter's case* a railroad conductor standing on a track engaged in giving instructions as to the movements ˙of his train was run over and killed by another train backing on him without keeping a proper lookout. The cause was held one for the jury.

In *Stanley's case,* referred to with approval in *Hammett's case, supra,* the· Court among other things held as follows: "A person walking on a railroad track is not bound to be on the lookout for a danger which he has no reasonable ground to apprehend, and has a right to suppose that the railroad company will take care to provide against injuring pedestrians by the use of proper lights and signals."

In the decisions cited and chiefly relied on by defendant, the Court was of opinion that there was no fact in evidence tending to legally qualify the obligation of the injured party to properly care for his own safety, and recovery was denied on the ground of his own negligence, existent and concurring at the very time of the collision.

Thus in *Exum's* and *Beach's cases*·the intestate was killed when .they were on the main track of a trunk railroad about· the schedule time for a passenger train. The conditions called for alert attention and to the very time of the occurrence, and claimants were held guilty of contributory negligence.

In *High's case,* 112 N. C., 385, the plaintiff was on a siding when injured, but the freight train was approaching on the͵ main track at a very slow rate of speed, and there was nothing to suggest or indicate to plaintiff that it would not enter on

the siding; the evidence, too, seems to establish that there was a passenger train also at the station at this time, making it probable that one or the other would take the siding.

In *Meredith's case,* also, 108 N. C., 616, the plaintiff was injured on a side-track, but it was by a train moving in the same direction and on same track as plaintiff, and which he had just passed.

In *Tull's case,* 151 N. C., 545, and *McAdoo's,* 105 N. C., 150, and seemingly in *Neal's case,* 126 N. C., 634, the persons injured or killed were on or near the railroad yards and were run into by switching engines moving back and forth where conditions called for constant attention, and where, as stated, there was nothing to legally qualify the obligation on the claimant to be continuously careful for his own safety.

But none of these cases should be allowed as controlling on the facts presented on this appeal, where the intestate was killed by a regular train whose schedule was fully known, which was not expecting to go on the side-track and had not done so for six or seven years, nor apparently intended to make any stop at the station, and when the intestate on hearing the signal for the station passed over onto this side-track and continued on his way to the station.

On the facts in evidence, we are of opinion that the cause is one coming under the first line of cases to which we have referred, and the issue as to plaintiff's conduct should also be submitted to the jury on the question whether plaintiff was guilty of contributory negligence in failing to observe and note the approach of the train under all the facts and attendant circumstances as they may be shown to have existed at the time.

There was error in the order of nonsuit, and the same will be set aside.

Reversed.

WALKER, J., dissenting: I can see nothing in this record that legally excuses the conduct of the intestate or that takes the case out of the rule, long established by this and many other courts, that one who uses the tracks of a railroad com-

pany as a footway, for his own convenience, whether as tres-
passer or licensee, must look and listen for approaching trains,
and the engineer has the right to presume, though he sees him
walking along the track, and even to the very last moment
when it is too late to save him, that he will step from the track
and save himself, provided there is nothing in his appearance
indicating a state of helplessness, as, for example, a foot-
traveler on a trestle, or in some other position where he cannot
safely leave the track, or one apparently deprived of his senses
of sight and hearing, or known by the engineer to be deficient
in his mental faculties and not then capable of taking care of
himself. With these well known exceptions, the rule has been
invariable and uniform in all jurisdictions, that a railroad
track, wherever and however situated, is a place of danger and
affords ample notice to any one who uses it, that he must look
both ways and listen for approaching trains, and take care of
himself.

The question as to the liability of the defendant has never
been determined, with the exceptions already noted, by examin-
ing the conduct of the engineer, but solely with reference to
that of the person who may be on the track ahead of the train,
if apparently in possession of his faculties and senses and able
to protect himself from harm.

There is not the slightest question in this case as to the
mental condition of the intestate being normal. It is admitted
that he was walking on the track and able to leave it at any
moment, if he had actually looked and listened and thus had
become aware of the approach of the train, and the plaintiff's
whole case is bottomed upon the fact that he did not think the
side-track, upon which he was injured, would be used by the
coming train. All tracks are laid for the use of the railroad
company, and they may go upon them at any time, at their
will and pleasure, without previous notice to the public of
their intention to do so. Otherwise the running of trains
would be regulated by those who use its tracks as trespassers
or implied licensees, and not by itself. It would be gross negli-
gence for a company so to conduct its business, and we would
not hesitate to so hold, if any injury resulted therefrom. The

public safety requires—yes, demands—that it be allowed perfect freedom in the use of its tracks. Private convenience, in this respect, must yield to the public good, the public convenience, and the public safety. But this Court and many others have held that the fact of his not expecting a train on the siding is no excuse, and does not except his case from the general rule. A court of the highest authority has said: "The track itself, as it seems necessary to iterate and reiterate, is itself a warning. It is a place of danger. It can never be assumed that cars are not approaching on a track, and that there can be no danger from them." The true principle cannot be stated more clearly or more strongly. But this Court has stated this rule with equal clearness and applied it most rigidly. In *High v. R. R.*, 112 N. C., 385, a leading case on this subject, which has been approved over and over again, it appeared that the plaintiff, a woman wearing a long poke-bonnet which totally obstructed her vision, was walking on a side-track, supposing that the approaching train would take the main track, "as they usually did," but it so happened that on the particular occasion it did not, but used the side-track, and it was held to be clear that she could not recover, as she had no right to speculate on the course the engine would take. This is what the Court said with reference to the facts, which are in every essential respect like those we have here: "If the plaintiff had looked and listened for approaching trains, as a person using a track for a footway should in the exercise of ordinary care always do, she would have seen that the train, *contrary to the usual custom,* was moving on the siding. The fact that it was a windy day and that she was wearing a bonnet, or that the train was late, gave her no greater privilege than she would otherwise have enjoyed as licensee; but, on the contrary, should have made her more watchful. There was nothing in the conduct or condition of the plaintiff that imposed upon the engineer, in determining what course he should pursue, the duty of departing from the usual rule that the servant of a company is warranted in expecting licensees or trespassers, apparently sound in mind and body and in possession of their senses, to leave the track till it is too late to prevent a collision,"

citing *Meredith v. R. R.*, 108 N. C., 616; *Norwood v. R. R.*, 111 N. C., 236. And those cases fully sustain the correctness of the proposition. They both hold that when on the track, the absolute duty of the pedestrian is to look and listen, if he can see and hear, and it is not at all modified by the fact of its being a side-track instead of the main line. We repeat that the public could not be safely and adequately served upon any other principle. If trains are to be stopped to await the pleasure of foot-passengers in leaving its tracks, when they can step off so easily and avoid injury and not obstruct the passage of trains, the company cannot perform its public duty as a carrier, and the public convenience must give way to private interests, contrary to the maxim of the law.

In *Meredith's case* the party injured was on the side-track and not expecting the train to run on that track, but on another. In this connection let it be said that the same principle applies to trespassers and licensees. It was said in *Meredith's case:* "Actual or implied license from the railroad company to use the track as footway would not relieve him from the consequences of failing to exercise ordinary care. The license to use the track does not carry with it the right to obstruct the road and impede the passage of trains," citing *McAdoo v. R. R.*, 105 N. C., 140. We may also remark that all of those cases hold that the speed of the train can make no difference, because the pedestrian, if he exercises due care, can escape danger as well in the one case as in the other. *High v. R. R.* and *McAdoo v. R. R., supra.* But *Glenn v. R. R.*, 128 N. C., 184, is also decisive of the question. It is another case where the plaintiff stepped from one track to a side-track, thinking that he was safe there, as the train would not run on that track, and therefore he turned his back to the approaching train, which he knew was coming, as he heard its whistle, and did not look or listen. *Held,* that he could not recover. This Court unanimously said: "The railroad track itself was a warning of danger, made imminent by the approaching train. It was then his duty to keep his 'wits' about him and to use them for his own safety. He knew or ought to have known that he was a trespasser, and it was his duty to have gotten out

of the way of the train. The defendant was under no obligation to stop its train at the sight of a man on its track." The Court further said that it was apparent to the engineer that the plaintiff was in full possession of his faculties and could take care of himself, and the engineer had the right to presume that he would leave the track in time to avoid injury. "That he did not do so was his own fault, and he should suffer the consequences of his folly." See, also, *Syme v. R. R.,* 113 N. C., 558. There was a plain duty resting upon the plaintiff's intestate to look and listen and not to take any chances, because he may have supposed that the company would not use one of its tracks. "According to the principle declared in all of the cases, the question of liability is not to be solved by any reference to what the defendant may have done or omitted to do, but by the conduct of the plaintiff, and if the latter would not see when he could see, or would not hear when he could hear, and remained on the track in reckless disregard of his own safety, the law adjudges any injuries he may have received to be the result of his own carelessness. *Parker v. R. R.,* 86 N. C., 221; *Meredith v. R. R.,* 108 N. C., 616; *Norwood v. R. R.,* 111 N. C., 236; *Syme v. R. R.,* 113 N. C., 565; *Stewart v. R. R.,* 128 N. C., 518; *Wycoff v. R. R.,* 126 N. C., 1152; *Sheldon v. Asheville,* 119 N. C., 606; *Ellerbe v. R. R.,* 118 N. C., 1024; *Lea v. R. R.,* 129 N. C., 459; *Bessent v. R. R.,* 132 N. C., 934.

The decisions in other States are overwhelmingly against the principle that circumstances like those we have here take the case out of the general rule, and it is held that no custom of the railroad company to run its trains according to a certain schedule, or to use one track and not another, or to run its trains at certain times in one direction (east) and at other times in another (west) will excuse one using its tracks from looking and listening, or requires the engineer to presume that he has not done so, but, on the contrary, it is held that he is within the zone of danger however and wherever the track is located. *R. R. v. Hart,* 87 Ill., 529; *Morgan v. R. R.,* 116 C. C. A. (196 Fed. Rep., 449); *Kinnare v. R. R.,* 57 Ill., 153; *White v. R. R.,* 73 N. Y. Suppl., 827; *Smith v. R. R.,* 141 Ind., 92; *Boyd v.*

R. R., 50 Wash., 619. Many other cases might be cited, some of them being in defendant's brief.

The Court said in *Morgan v. R. R., supra:* "It is altogether probable that he acted on the daughter's statement that the trains did not come down that track; but he had no right to do so. Which of the tracks would or should be used for its various trains was, of course, a matter for the exclusive determination of the railroad company." It was held in *Rich v. R. R.,* 31 Ind. App., 10, that a traveler using a railroad track has no right to confine his precautions to his knowledge of the schedules and customs of the company, but must take due care against the approach of "extra trains" and even "wild trains," those which are expected as well as those not expected to use the track on which he is walking. And in *White v. R. R., supra,* the Court stated that the accident was due entirely to the plaintiff's want of proper care for his own safety in relying upon his expectation, which was according to the railroad company's usage, "that the train by which he was struck would not come upon the track. He must look out for all trains, and any other rule, it was said, would measure his conduct by the altogether too liberal rule of chances and risks, and would impose upon the railroad company too rigorous and burdensome responsibilities," regardless of the inconvenience to the public arising from operating its trains under any such handicap.

The company owed the intestate no legal duty to keep the switch lock in repair, so that its trains would be held to the main track. It did owe the duty to its passengers to see that its track was in proper condition; but not to him. Nor was there any duty to notify him when the side-track would be used. His plain duty was to act upon the presumption that it might be used at any time. Besides, the railroad company was not guilty of any negligence with respect to the switch, as it was tampered with by somebody and broken, without any opportunity of the defendant to inspect and repair it. A freight train had just passed by it on the main track, when it was in good order. What is called a side-track in this case is not an unused track, but is really a "pass-track," that is, one by means of which trains running in opposite directions can pass at that point.

One is side-tracked and the other passes by on the main line. So that intestate had no right to believe that a train would not pass over the side-track. The question, therefore, is narrowed to this, Which has the superior right to the use of the track, the railroad who owns it and is required to operate its trains for the benefit of the public under certain penalties and liabilities for its neglect, or a trespasser, or even a licensee, who walks on the same for his own convenience, especially when, as in this case, the pedestrian is not bound to use it, but leaves a beaten path on the side of the main track for that purpose, and as matter of choice? This question is not hard to answer, and the preferential right of the railroad company must be admitted.

The Court, in its opinion, concedes the general rule, that a person using a railroad track must "look and listen," but says that the duty may be qualified by the attendant facts and circumstances. There is no such qualification in a case like this one, and the cases cited for this position relate either to crossings, when the view is obstructed or no signals given (*Stanly v. R. R.*); or to some duty owing to a passenger (*Ray v. R. R.,* 141 N. C., 84); or to employees having a right to use the track (*Sherrill v. R. R.,* 140 N. C., 252); *Lassiter v. R. R.,* 133 N. C., 244); or to flying switches or shunting of cars, where a person entitled to use the track is injured thereby (*Farris v. R. R.,* 151 N. C., 483; *Johnson v. R. R., ante,* 431; *Wilson v. R. R.,* 142 N. C., 333; *Hudson v. R. R.,* 142 N. C., 198); or to persons on trestles or helpless on the track (*Snipes v. R. R.,* 152 N. C., 42); or where trains are run without lights or signals in the night-time (*Hammett v. R. R.,* 157 N. C., 322; *Purnell v. R. R.,* 122 N. C., 832. But in all of those cases there was some legal duty owing to the injured party which was neglected. Not a one of them touches the facts of this case, as I think, but all can be referred to a well recognized principle of the law, which does not apply to a trespasser or mere licensee walking along the track, in broad daylight and in full possession of all his faculties, with the power and capacity to look and listen, with an unobstructed view, and, too, with notice by the sound of the whistle, which he heard, that a train was approaching. Besides,

there was, nothing here to modify the general rule that a man
on the tracks should look and listen, for the company was pro-
ceeding rightfully with its train along one of its tracks, with-
out any negligence on its part.

Although the company was not in any legal fault, it is re-
quired by this decision to look out for foot-passengers, neverthe-
less, and to give them timely warning, so that they may leave
the track.

Suppose it was doing the unexpected or unusual thing of run-
ning on its own side-track. It had the legal right to do it; and
in the exercise of a legal right there can be no wrong.

There is nothing in the evidence to prevent the full opera-
tion of the ordinary rule requiring track walkers to look out for
trains. We have said very recently that even where a traveler
on a highway at a crossing has been misled by the negligent act
of a railroad company, and is exposed to injury by reason
thereof, it does not absolve him of the duty to exercise due care
to avoid injury, that is, such care and regard for his own safety
as the circumstances and surroundings would naturally and rea-
sonably lead a man of ordinary prudence to use, and if his situ-
ation is suggestive of danger, he is required to use such care as
is proportioned to the risk or hazard, making allowance, of
course, for the conduct of the railroad company or its servants,
in so far as it has reasonably affected his own. But at last he
must use ordinary care, whatever the situation may be. *John-
son v. R. R., ante,* 431. The only care he could use in this
case, or the least he could have exercised, was to look and listen
for approaching trains.

Let us suppose that the train had taken the side-track, under
an order from the dispatcher and without the knowledge of the
intestate, and the switch had been set to the side-track, instead
of being tampered with, in execution of the order, and plaintiff
had been killed, as he would have been, can it be said that he
was not required to look and listen, simply because he did not
expect the train on the side-track, but presumed that it would
stay on the main line? Surely not. He had no greater right
or privilege, in his situation, than the ordinary track walker
who takes the chances as he did.

My conclusion is that the case falls directly and fully within the principle of *High v. R. R.* and the other cases already cited, and the present decision of the Court, therefore, conflicts with them. I admit that the decision is not in conflict with *Bessent v. R. R.,* 132 N. C., 934; *Morrow v. R. R.,* 147 N. C., 623; *Beach v. R. R.,* 148 N. C., 153, and the many cases in our reports which are like them, and while it recognizes the principles as there stated and applied, and concedes that those cases were properly decided, it fails to extend the same principle, which is thus recognized, to the facts of this case, when it is equally applicable to them.

In *Beach's case* we said: "A railroad track is intended for the running and operation of trains, and not for a walkway; and the company owning the track has the right, unless it has in some way restricted that right, to the full and unimpeded use of it. The public have rights as well as the individual, and usually the former are considered superior to the latter. That private convenience must yield to the public good and public accommodation is an ancient maxim of the law. If we should for a moment listen with favor to the argument and eventually establish the principle that an engineer must stop or even slacken his speed until it may suit the convenience of a trespasser on the track to get off, the operation of railroads would be seriously retarded, if not practically impossible, and the injury to the public might be incalculable. The prior right to the use of the track is in the railway as between it and a trespasser who is apparently in possession of his senses and easily able to step off the track." And in *Morrow's case:* "If he (the pedestrian) actually saw the train or heard it as it approached him, and failed to clear the track, if he had reasonable time to do so (as he had in this case) he was guilty of such negligence as defeats his recovery."

The killing of the intestate was the direct result of his own fault, and there is no culpability on the part of defendant.

BROWN, J., concurs in this opinion.