This is an action brought by the plaintiff administratrix against the defendant for the recovery of damages on account of the alleged negligent killing of plaintiff's intestate, Julian Carr Davis, a sixteen-year-old boy, in the yards of the defendant at Ashevile on 18 November, 1916. Plaintiff's intestate was a messenger boy of the defendant, and was charged with the duty of delivering messages from the yardmaster's office to various employees of the defendant in the railroad yards.
The evidence offered by the plaintiff tended to prove that at the time plaintiff's intestate was killed by the negligence of the defendant he was standing between two parallel tracks of defendant, and had just handed Conductor Black a message pertaining to the movement of a certain car, and "the boy and Black were reading the message there" when he was knocked down and killed by an engine going east. The evidence further tended to show that at the exact point where the boy was struck, parallel tracks of the defendant were so close together that the boy did not have room to perform his duties with safety, and that he did not have room to get out of the way of the engine which was backing east without being injured by the engine and cars which were traveling west on the parallel track at the time he was struck, and that no signal or warning was given by the trainsmen on the engine, and that no one was one the front of the engine to give warning or to keep a lookout. The train which killed the deceased was running with the tender in front of the engine so the engine could not see the deceased.
The evidence for the defendant tended to prove that there was ample space between the tracks for one to stand in safety with trains passing on both of them; that the train going west had passed the deceased before he was struck, and that the deceased was looking in the direction of the train which killed him. *Page 690 
There was a motion for judgment of nonsuit, which was denied, and the defendant excepted.
His Honor charged the jury on the issue of negligence as follows: "I charge you that it was the duty of the defendant company, by its engineer or others, to keep a lookout over and along the track where it was moving its engine, and that if it failed to do so, it would be negligent, and it would be your duty to answer that issue `Yes.'" The defendant excepted.
(650) Also on the issue of damages as follows: "Now, when you come to consider that, it would be your duty to take into consideration as part of the evidence of his negligence, his age, the time that he had been engaged, his acquaintanceship with the engines with which he was surrounded, the extent of the business he was doing at the time what there was to attract his attention, what there was to keep him from observing the necessary things to do in order to keep him from avoiding an injury; and you will also take into consideration the character of the morning and the distance he might have seen the train or engine approaching, if he could have seen it; and then you will measure the damages by such reduction as you think proper under all the circumstances." The defendant excepted.
The jury returned the following verdict:
1. Was the plaintiff's intestate, Julian Carr Davis, engaged in interstate commerce at the time the said Julian Carr Davis was injured and killed? Answer: "Yes."
2. Was the defendant Southern Railroad Company engaged in interstate commerce at the time the said Julian Carr Davis was injured and killed? Answer: "Yes."
3. Was the plaintiff's intestate, Julian Carr Davis, injured and killed by the negligence of the defendant Southern Railroad Company? Answer: "Yes."
4. Did the plaintiff's intestate, Julian Carr Davis, by his own negligence contribute to his injury and death? Answer: "Yes."
5. What amount, if any, is the plaintiff entitled to recover? Answer: "$4,000."
Judgment was rendered in favor of the plaintiff and the defendant appealed.
Contributory negligence is not a defense in an action to recover damages on account of negligence under the Employer's *Page 691 
Liability Act, and it cannot, therefore, be taken into consideration on a motion for judgment of nonsuit.
We can deal only with the evidence relied on to prove the negligence of the defendant, which must be construed most favorably for the plaintiff, and when so considered, we are of opinion evidence was introduced on the trial fit to be considered by the jury.
The evidence tends to prove that the deceased was where he had the right to be in the performance of a duty; that he was engaged in reading telegrams; that he was standing between two parallel tracks close together; that a train was passing along one of these tracks (651) going west and that the train which killed the deceased passed on the other going east; that the place where the deceased was standing was dangerous, and one could not stand there with trains passing on both tracks without being struck; that the train was running with the tender in front of the engine so that the engineer could not see ahead; that there was no watchman on the front of the train, or if there was, he was not keeping a lookout; that no signal was given of the approach of the train, and the inference is permissible that if a lookout had been maintained or a signal given, the deceased would have been warned of his danger, or the train would have been stopped in time to avoid the injury.
The evidence is stronger for the plaintiff than in Lassiter v. R. R.,133 N.C. 244, in which a judgment of nonsuit was reversed on appeal, in that the employee here was in a more dangerous situation, which could have been readily observed, and this is the important and material fact which distinguishes this case from Aerkfetz v. Humphrey, 145 U.S. 418, an authority relied on by the defendant.
In the Lassiter case the deceased, "a freight conductor in the defendant's service, was standing between the main track and a sidetrack in the defendant's yard in the town of Henderson, giving instructions to the hands on top of the box cars as to the movements of his train. The train of which he was in charge was on the main track and backing towards him. He was looking at it as he gave the signals to the hands. On the sidetrack a shifting engine with two box cars was moving backwards at the rate of about four miles an hour in the direction of the intestate, his back being turned to the shifting engine. When the box cars attached to the shifting engine were within about twenty steps of the intestate he stepped from a safe place between the track upon the sidetrack, with his back towards the shifting engine, and when engaged in giving orders to the men on the top of the box cars of his own train he was run over and killed by the box cars attached to his own train he was run over and killed by the box cars attached to the shifting engine. A person, Henry Thomason, who claimed to be *Page 692 
passing by, endeavored to attract the attention of the intestate by hallooing to his peril, but to no avail. There was no watchman on the box cars of the shifting engine. The engineer, from his cab, could not have seen the deceased on the sidetrack. There was no evidence that the bell was not ringing, nor any that the whistle was not sounding."
The court held that the question of defendant's liability ought to have been submitted to the jury, and among other things, said: "It is the duty of railroad companies to keep a reasonable lookout on moving trains. When Thomason saw the intestate step upon the sidetrack the end of the box car attached to the shifting engine was twenty steps from him and the cars were moving at the rate of four (652) miles an hour. The same witness said that the intestate had time to have gotten off if he had heard the witness when he hallooed to him. That evidence was competent and fit to have been submitted to the jury upon the question of the last clear chance of the defendant — that is, whether if both the plaintiff and the defendant had been negligent the defendant could have prevented the death of the intestate by the use of means at hand or that reasonably ought to have been at hand." . . .
"In the present case it was of the utmost importance for the defendant to have kept a lookout other than that which the engineer ordinarily might keep, for the engineer here could not see in front of him by reason of the box cars, although the track was straight for some distance, and the view but for the box cars unobstructed."
This case has been approved ten or twelve times, the latest cases referring to it being Talley v. R. R., 163 N.C. 572; Meroney v. R. R.,165 N.C. 612; Norman v. R. R., 167 N.C. 538.
The charge on the issue of negligence is erroneous. It is correct in so far as it imposes on the defendant the duty of keeping a lookout, but in it effect ignores the evidence of the defendant tending to prove that the deceased was looking in the direction of the train as it approached; that he was in a place of safety; that there was ample space between the track for one to stand without being injured with trains passing on both tracks; that the train going west had already passed the deceased; that if a lookout had been maintained there was no need of giving a signal, and no reason to stop because he was in no danger, and it omits proximate cause as fact to be found under the third issue.
A similar instruction has been condemned at this term in Ware v. R. R., and in Lee v. Utilities Co., in which the authorities are reviewed, the Court saying the last case: "The court failed to tell the jury that the negligence of defendants must have been the proximate cause of the injury in order to be actionable, so that the issue could be answered `Yes.'" *Page 693 
"In order to establish actionable negligence, the plaintiff is required to show by the greater weight of the testimony, first, that there has been a failure to exercise proper care in the performance of some legal duty which the defendant owed the plaintiff, under the circumstances in which they were placed, proper care being that degree of care which a prudent man should use under like circumstances and charged with a like duty; and second, that such negligence breach of duty was the proximate cause of the injury — a cause that produced the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such a result was probable under the facts as they existed. Ramsbottom v. R. R., 138 N.C. 38."
There is also error in the instruction on the issue of damages, (653) R. R. v. Tilghman, 237 U.S. 500.
In the Tilghman case the Court, after holding that "where the casual negligence is attributable partly to the carrier and partly to the injured employees, he shall not recover full damages, but only a diminished sum bearing the same relation to the full damages that the negligence attributable to the carrier bears to the negligence attributable to both; the purpose being to exclude from the recovery a proportional part of the damages corresponding to the employer's contribution to the total negligence" deals with the instruction under review as follows:
"At the trial the court instructed the jury that if they found the plaintiff was injured through the concurring negligence of the railway company and himself, they should determine the full amount of damages sustained by him, `and then deduct from that whatever amount you think would be proper for the contributory negligence.' This was reiterated in different ways and somewhat elaborated, but the fair meaning of all that was said was that a reasonable allowance or deduction should be made for the plaintiff's negligence and that it rested with the jury to determine what was reasonable. No reference was made to the rule of proportion specified in the statute or to the occasion for contrasting the negligence of the employee with the total casual negligence as a means of ascertaining what proportion of the full damages should be excluded from the recovery. On the contrary, the matter of diminishing the damages was committed to the jury without naming any standard to which their action should conform other than their own conception of what was reasonable. In this there was a failure to give proper effect to the part of the statute before quoted. It prescribes a rule for determining the amount of the deduction required to be made and the jury should have been advised of that rule and its controlling force. *Page 694 
"It results that the objection to the instructions upon this subject was well taken and should have been sustained.
The error pointed out is present in the instruction, to which the defendant excepts, and the two cases cannot be distinguished.
New trial.
Cited: Moore v. R. R.,185 N.C. 191; Cobia v. R. R., 188 N.C. 495; Brooksv. Lumber Co.,194 N.C. 145; Daughtry v. Cline, 224 N.C. 383; Futrelle v. R.R.,245 N.C. 40.
(654)