MATTIE BELL MOORE, ADMINISTRATRIX, v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 28 March, 1923.)

1. **Employer and Employee—Master and Servant—Negligence—Railroads —Presumptions—Evidence—Questions for Jury—Trials.**

The ordinary presumption that one who is in possession of his faculties, walking on a railroad track, will step to a place of safety on the approach of the train does not apply to an employee standing on the track absorbed in the performance of a duty he owes to the railroad company; and where the plaintiff's intestate was the head brakeman of the railroad company, absorbed in his duties of checking and directing from a list cars being placed by the freight train to which he was attached upon the siding to be left at a station, and there is evidence that he was struck and killed by another train of the defendant, passing over the track upon which he was standing; and that the engineer on this train had a clear and unobstructed view, and could, by keeping a proper lookout, have avoided killing him, but the train approached without signals or warning; the question of defendant's actionable negligence upon the issue of the last clear chance was for the determination of the jury, and defendant's motion as of nonsuit was erroneously allowed.

2. **Employer and Employee—Master and Servant—Railroads—Assumption of Risks—Employers' Liability Act—Statutes—Defenses.**

Under the provisions of the "Employers' Liability Act," C. S., 3467, contributory negligence is not a defense in the employee's action against a railroad, but requires an apportionment of liability; and the Federal act has no application where the negligence of a fellow-servant, which the injured one could not have foreseen or expected, was the sole, direct, and immediate cause of the injury.

APPEAL by plaintiff from *Devin, J.,* at February Term, 1923, of CUMBERLAND.

This is an action by plaintiff for damages for the wrongful death of the intestate, who was her husband. He was head brakeman on defendant's local freight train between Fayetteville and Smithfield and was run

over and killed by a north-bound extra, consisting of locomotive and caboose, while he was standing about 500 yards north of the station on the end of the crossties on the west side of the north-bound main-line track. He was standing there in order to get a proper view of the cars as they came out of the spur track, so that he could check off the same, and was deeply engrossed and absorbed in studying a paper on which was written a list of the cars to be shifted, and while the engine of his own train was close by, engaged in shifting these cars on the west side, in which direction he was facing. It was about 4 o'clock in the afternoon, and the engineer of the extra had a clear view of intestate for 400 or 500 yards, but blew his whistle only once for the crossing south of the station.

The court allowed a motion of nonsuit, and the plaintiff appealed.

*Dye & Clark for plaintiff.*
*Rose & Rose for defendant.*

CLARK, C. J. In *Lassiter v. R. R.,* 133 N. C., 244; *Smith v. R. R.,* 132 N. C., 819, and *Peoples v. R. R.,* 137 N. C., 96, the distinction is clearly recognized between the presumption which arises when a person in the apparent possession of all his faculties is seen walking on the track and the duty owed to one of the railroad employees who is absorbed and engrossed in his work. In the *Lassiter case, supra,* the conductor of a freight train had his back to an approaching shifting engine, and while engaged in giving orders to his men on his own train, stepped in front of the box cars attached to the shifting engine and was run over and killed. The Court held that it should have been left to the jury on the issue of the last clear chance, as defendant was negligent in having no watchman to notify the engineer of the shifting engine, for it is the duty of the defendant company to keep a lookout.

On page 249 of that case, it is said in words very applicable to this case: "The intestate was at a disadvantage, was not upon equal opportunity with the defendant to avoid the injury, for his manner and conduct showed that he was oblivious to his surrounding and was engrossed in the management of his train and his crew, . . . his action showed that he did not hear the bell ringing, . . . the condition of the intestate was as helpless as if he had been asleep or drunk on the track, and the defendant owed him at least as high a duty as if he had been asleep or drunk."

In *Smith's case, supra,* he was engaged in painting switch targets on the track when injured by a passing engine, and it was held, citing numerous cases from other states, that it was the defendant's duty to avoid injury to its servants while engaged in work in the yard.

In *Peoples' case, supra,* there was evidence that at the time the intestate was killed he was in the discharge of his duties as an employee of the defendant, "with his mind absorbed in the attempt to mount a shifting engine coming toward him."

In *Ray v. R. R.,* 141 N. C., 84, the *Lassiter* and *Smith cases, supra,* are cited with approval, and it is said: "The authorities are to the effect that when the plaintiff (or intestate) was at the time rightfully upon the track, or sufficiently near it to threaten his safety, and is negligent and so brought into the position of peril, if the defendant company, by taking proper precautions and keeping a proper lookout, could have discovered the peril in time to have averted the injury by the exercise of proper diligence and negligently fails to do so, then defendant would still be responsible, although the plaintiff may have also been negligent in the first instance," citing *Lassiter v. R. R., supra.*

In *Brown v. R. R.,* 144 N. C., 634, a recovery was allowed to a section hand who was injured on the track, and whose position was such as to indicate he was insensible to the approaching engine which struck him.

In *Davis v. R. R.,* 175 N. C., 652, it is said the *Lassiter case, supra,* had been approved ten or twelve times.

In *Pickett v. R. R.,* 117 N. C., 616, it is said: "It is settled law in North Carolina that it is the duty of an engineer on a moving train to maintain a reasonable vigilant outlook along the track in his front, and the failure to do so is the omission of a legal duty. If, by the performance of that duty, an accident might have been averted notwithstanding the previous negligence of another, then under the doctrine of *Davies v. Mann,* 10 M. and W., 545, and *Gunter v. Wicker,* 85 N. C., 310, the breach of duty was the proximate cause of any injury growing out of such accident, and when it is a proximate cause the company is liable to respond in damages. Having adopted the principle that one whose duty it is to see does see, we must follow it to its logical result." All these cases, except one, were before the adoption of the present "Employers' Liability Act," Laws 1913, ch. 6; C. S., 3467, under which contributory negligence is no longer a defense, but simply requires an apportionment of the liability, and, therefore, in any view, it was error to direct a non-suit on that ground. *Davis v. R. R.,* 175 N. C., 648. Besides, the burden to prove contributory negligence is on defendant. Laws 1887, ch. 33; C. S., 523.

In *Collins v. R. R.,* 124 Ga., 858, it is said: "It certainly cannot be decided as a matter of law that the negligence is upon the part of the laborer engaged in a physical burden that taxes his strength if for a few moments he permits himself to become engrossed in his task and oblivious to possible dangers."

In *Bluedorn v. R. R.,* 108 Mo., 449, it is also held that when a switch-man is injured through stepping onto an adjacent track and being run over, the question of his contributory negligence is for the jury, which has the right to take into account the fact that he was necessarily engrossed in his duties.

An employee of a contractor, at work for a railroad company, in *Goodfellow v. R. R.,* 106 Mass., 601, was held not culpable in being so engrossed in his work of holding the guy of a derrick that he failed to notice the approach of an engine. To same purport, *Tobey v. R. R.,* 94 Iowa, 256; 33 L. R. A., 496.

In the case at bar the engineer of the extra could see more than a quarter of a mile. It was a reasonable inference that he saw Moore studying his switch list, standing on the ends of the crossties on the west side of the north-bound track, facing his own shifting engine, which was to the north of him, thus putting the intestate's back partly towards the extra. The engineer could therefore have seen him until he got so close that his view was obstructed by his own locomotive, but even that did not relieve the defendant of the duty to keep a lookout on the left side, where the fireman sits. *Arrowood v. R. R.,* 126 N. C., 631. Before his view was shut off the engineer of the extra could have heard the other engineer give the four short blasts on his whistle and see that Moore without looking up gave him a signal. Bishop, the engineer of the extra, also could see that Patterson did not move his train back and drop a car in the clear in response to that order. In short, he could have seen that Moore, the intestate, was engaged in directing the shifting of the cars from the spur track, and that he was engaged in studying the list in his hand for that purpose.

Yet, with this knowledge, the engineer of the extra neither blew the danger signal of the extra nor slackened his speed.

The engineer of the extra had given only the crossing blow, 500 yards away. There is no evidence that the bell was ringing on the extra, which was running light, at a speed of 30 to 35 miles an hour past the station and in the yard at Smithfield, where persons were to be expected, and where the local freight could be seen by Bishop and his fireman for several hundred yards. Having passed the caboose near the tank they knew the freight's crew were engaged in shifting near a point which they had to pass with the extra. The whistle cord was in reach of the hand of the engineer of the extra, the bell cord was close to the fireman, yet they took a chance with another man's life and lost.

The assumption of risk is not recognized as a defense in this State under the Employers' Liability Act. *Gaddy v. R. R.,* 175 N. C., 520, citing *Ware v. R. R., ibid.,* 501; *Kinney v. R. R.,* 122 N. C., 961.

The doctrine of assumption of risk, although not entirely abolished by the Federal Employers' Liability Act, has no application where the negligence of a fellow-servant, which the injured party could not have foreseen nor expected, is the sole, direct, and immediate cause of the injury. *Reed, Admx., v. Director General,* U. S. Supreme Court, filed 27 February, 1922.

The judgment of nonsuit must be

Reversed.