W. B. TILGHMAN v. SEABOARD AIR LINE RAILWAY COMPANY.

(Filed 5 November, 1914.)

1. Appeal and Error—Briefs—Assignments of Error Abandoned—Rules of
Court.

   Assignments of error not mentioned and discussed in the brief of appel-
   lant are taken as abandoned on appeal under Rule 34, and it is pointed
   out by the Court that upon mature consideration of counsel in making
   their briefs it is well for them not to set out useless assignments, so that
   the attention of the Court may be given to the material propositions of
   law presented in the appeal.

2. **Pleadings—Amendments—Power of Courts—Trials—Issues—Instructions.**

It is within the discretion of the trial court to permit amendments to the pleadings during the progress of the trial (Revisal, sec. 307), and where by such amendment certain matters formerly at issue have been eliminated, it is proper for the court·to rule out evidence relating to the matters eliminated, and to reject issues and prayers for special instructions relating thereto.

3. **Evidence—Depositions—Trials—Witnesses—Courts.**

When the deposition of a witness, taken when he was in another State, has been read on the trial of the cause, in his absence, the trial judge may, in his discretion, permit the witness, then present, to orally testify after his deposition has been read in evidence.

4. **Appeal and Error—Evidence—Questions—Objections and Exceptions.**

Where questions are ruled out as evidence, it must be made to appear of record what the expected answer will be, so that the Court may see their materiality and relevancy, or exceptions taken thereto will not be considered.

5. **Courts—Evidence—Expert Witnesses—Recross-examination—New Matter.**

It is within the discretion of the trial judge to permit an expert witness to testify to new matter on his recross-examination.

6. **Railroads — Train Orders—Copies—Identification—Witnesses—Nonexpert Evidence.**

Where damages are sought in an action against a railroad company for a wrongful death alleged to have been inflicted on the deceased by reason of an erroneous train order, made out in original and carbon, causing a collision of two trains, wherein the deceased met his death, it is competent for a witness who has not qualified as an expert to testify that he had inspected the original order, and that the copy exhibited was not genuine.

7. **Same—Meeting Points—Similarity of Names.**

A railroad company having two stations on its road with similar names, "Grandy" and "Granite," wired from its proper department for two trains going in opposite directions to meet at one of these points, which they failed to do, resulting in a collision and the injury to the plaintiff, and the controversy turned upon the question which point was named in the order, the plaintiff contending that the order he received instructed "Grandy" as the meeting point. The plaintiff having been fully examined and testified he had no doubt that the order read "Grandy" instead of "Granite," was permitted to say that a paper-writing exhibited to him looked nearer like the one he had received than that introduced by the defendant, and that it read that the trains should pass at "Grandy," the name of the station as appearing upon the order being indistinct; and this is held no error.

8. **Railroads — Collisions—Meeting Points—Pleadings—Amendments—Negligence—Issues.**

The damages claimed in this action are sought for the alleged failure of a train order to properly name the meeting point of two of its trains going in opposite directions, whereby an injury was caused to the plaintiff, an

employee on one of them. *Held,* the issues of negligence, contributory negligence, and damages were the proper ones, the question of assumption of risk having been excluded from the case by a permitted amendment of the pleadings.

**9. Same—Trials—Evidence—Questions for Jury.**

Where damages are sought in an action against a railroad company for its alleged negligence in giving the proper order for the meeting of trains at a certain station, resulting in an injury to an employee on one of the trains, upon which the evidence is conflicting, the controversy presents issues of fact for the determination of the jury.

**10. Master and Servant—Federal Employers' Liability Act—Contributory Negligence—Damages.**

Under the Federal Employers' Liability Act an instruction that the jury should "deduct," in proper instances, a reasonable amount for contributory negligence, instead of saying the damages should be "diminished on account of the contributory negligence of the plaintiff," is not held for error.

**11. Evidence, Conflicting—Medical Expert—Trials—Questions for Jury.**

Where expert evidence is conflicting as to whether *locomotor ataxia* could result from an injury received in a collision of two railroad trains, it is for the jury to determine the truth of the matter.

**12. Master and Servant — Federal Employers' Liability Act — Contributory Negligence—Measure of Damages.**

*Semble,* that an instruction under the Federal Employers' Liability Act is erroneous, that if the negligence of the plaintiff was equal to the negligence of the defendant, he could not recover, for in such cases the plaintiff would be entitled to the full amount of the damages, less an allowance of one-half to be deducted on account of his contributory negligence.

The Court recommends a change in the statute as to selecting expert witnesses.

WALKER, J., dissenting; BROWN, J., concurs in dissent.

APPEAL by defendant from *Allen, J.,* at May Term, 1914, of WAKE.

*R. N. Simms and Douglass & Douglass for plaintiff.*
*Murray Allen for defendant.*

CLARK, C. J.   A large number of the assignments of error have been abandoned by failure of the appellant to make any argument or reference thereto in its brief.  Rule 34.  This is as it should be.  During the progress of the cause counsel, out of the abundance of caution, necessarily take a great many exceptions which on fuller examination cannot be sustained, and in such case they should neither clog the brief nor divert the attention of the Court from the vital errors alleged therein. One vital error is sufficient to secure a new trial, and there is no necessity of urging a large number of exceptions on the attention of the Court when it will be more effective to concentrate the argument on those exceptions in which the counsel have the most confidence.

The following exceptions are thus abandoned: 1, 4, 5, 7, 8, 19, 20, 21, 22, 23, 24, 28, 30, 31, 32, 34, 35, 38, 39, 40, 41, 42, 43, 47, 48, 49, 58, 59, 60, 65, 72, 74, 75, 86, 87, 91, and 94.

Exceptions 3, 6, 9, 10, 11, and 12 are to evidence relating to the "block system," but the judge expressly withdrew the same and instructed the jury not to consider it, after he had made an order allowing the plaintiff to strike out the allegations in the complaint relating to the block system, and this had been done.

Exceptions 13 and 14 cannot be sustained, for it was competent to read the depositions, as the witness was at the time absent in Virginia. Exceptions 15, 16, 18, 26, 27, and 29, to the admission of evidence, are overruled. In neither of them was there an exception to the answer, and as to the last five exceptions the witness was admitted as an expert. Exception 25 was because the court later in its discretion permitted the witness to be examined orally, though his deposition had been previously read. If the witness had testified orally it would have been in the discretion of the judge to have permitted him to be recalled, and the same is true here.

Exception 33 was to a pertinent question to the expert witness in opposition to the testimony of the expert witnesses of the defendant. Nor do we find any sound reason in favor of exceptions 36 and 37. The witness was an expert. Exception 44 is to a question asked on recross-examination, and permission to do so was entirely in the discretion of the court.

Exception 45 was to the plaintiff's inquiry of the witness Bryant, as to the paper introduced in evidence by the defendant purporting to be the train orders governing the plaintiff's action. The plaintiff contended that such paper was not genuine. This was not a question of an expert on handwriting, but merely required the witness who had seen and inspected the original to state whether or not this alleged carbon copy looked like the original.

Exception 46 is because the plaintiff, who had been fully examined whether he had any doubt about the correct reading of the writing, was permitted to say that the paper-writing looked nearer like the one he saw, and that at the time of reading it he had no doubt that it read that the train should pass at "Grandy."

Exception 50 was to the three issues submitted, which were the usual issues of negligence, contributory negligence, and damages which have been so often approved by the Court.

Exceptions 51 was to the refusal to submit the ten issues tendered by the defendant. The first six related to the assumption of risk, which had been withdrawn from the complaint and excluded from the consideration of the jury.

Issues 7 and 8 were substantially the same as 1 and 2, which were submitted. The 9th and 10th issues tendered are covered by the 3d issue, which was submitted.

Exception 51½ and 52 are to the permission accorded the plaintiff to amend his complaint. This was discretionary. Rev., 507. Exception 53 is the same as 51½.

Exceptions 54, 55, 56, and 57 were to instructions requested as to the block system, telephone system, and the names of the stations, which were properly refused, because the court had stricken out those matters from the complaint and withdrawn the evidence relating thereto from the consideration of the jury.

Exception 61, to the refusal of an instruction that upon plaintiff's own evidence his failure to stop at Granite was negligence on his part, cannot be sustained.

As to exceptions 62, 63, 64, 67, and 68, the defendant in his brief practically concedes that they cannot be sustained.

As to exception 66, the instruction asked could not have been given after the amendment of the complaint.

Exceptions 69, 70, and 71 cannot be sustained, because they related to instructions upon issues 2, 4, and 6, tendered by the defendant, which were not submitted to the jury because they related to the assumption of risk, which had been stricken out of the case.

The prayer referred to in exception 72 was substantially given by the court, as follows: "A mere proof of a collision is not in itself sufficient to establish negligence on the part of the defendant, and unless you find by the preponderance of that evidence that this collision was caused by negligence of the defendant, you must answer this issue 'No.'" It is *prima facie* negligence. *Marcom v. R. R.,* 126 N. C., 200; *Skipper v. Lumber Co.,* 158 N. C., 324.

The exceptions to refusals to charge as to certain paragraphs of the charge need not be discussed more fully.

The whole case turns upon the question whether there was negligence of the defendant, or of the plaintiff, or of his fellow-servants, in that a train order for train No. 81 to meet train No. 84 was written to pass at "Granite" or at "Grandy," or by the negligence of the operator at Norlina the word "Granite" was so written as to be mistaken for the word "Grandy." By reason of this mistake, however it was caused, a head-on collision took place, to the injury and damage of the plaintiff, as he alleges, but which the defendant denies. These were almost entirely controversies of fact, and while there were numerous exceptions as to the law, we do not perceive any errors in the conduct of the cause by the presiding judge which entitle the defendant to a new trial. There can be no benefit derived from a more minute discussion of the assignments of error.

TILGHMAN *v.* R. R.

This action was under the Federal statute which authorizes the jury to abate the allowance of damages in proportion to the contributory negligence, if any, of the plaintiff. We cannot concur with the defendant's counsel that the judge erred in telling the jury that they would "deduct" a reasonable amount for contributory negligence instead of saying that the damages would be "diminished" on account of the contributory negligence. This, it seems to us, is a distinction without a difference, and a jury of twelve men would not know the difference between the two, if there is any beyond a metaphysical distinction. It is true, the act of Congress and the decisions of the Court use the word "diminish," but when one thing is *deducted* from another the larger amount is diminished to that extent. His Honor went further, and charged that the amount deducted must be the equivalent of contributory negligence.

The defendant placed emphasis on its contention that the plaintiff suffered from *locomotor ataxia* and that this disease could not have been caused by an injury received in the collision. The evidence of the experts conflicted on this question. Under the present system of summoning experts, they are selected like witnesses to the fact because it is ascertained beforehand that their testimony will be favorable to the side that summons them. It has long been suggested by leading members of both the legal and medical professions that the method of summoning expert witnesses should be radically changed, and that they should be the "witnesses of the law," and not of either party. There is a strong opinion that experts should not be summoned in any case, civil or criminal, except upon an order made by the judge on motion and notice to the opposite side and upon a finding of the judge that it is expedient that such experts should be summoned, and thereupon the judge shall fix the number, not exceeding three, and shall select the experts and fix their compensation, with a provision that no other experts shall be examined on the trial and they shall receive no other compensation.

This is a matter, however, for consideration by the General Assembly.

Probably the weight of medical opinion is that this disease is never traumatic, but is always produced by one disease (syphilis). But there are those who assert that it is traumatic, that is, produced by an injury, and others still who, admitting the single cause stated, say that it may be accelerated or intensified by an injury. The jury held with one or the other or possibly both of the latter theories. We have no means of determining which set of experts were correct, and the matter was one of fact for decision by the jury.

This cause was very fully and ably discussed before us, as it was also, from the record, before the judge and jury in the trial court. After a

careful consideration of all the exceptions and the arguments thereon we find no reversible error which would entitle the defendant to a new trial. Nor are there any propositions of law whose more elaborate discussion would be of benefit in other cases of like nature. The trial turns almost necessarily, as above stated, upon two issues of fact, *i. e.*, whether and to what extent the negligence of the plaintiff, if any, contributed to the collision, and, further, whether the physical injury of which he complained was caused by said collision or was due to previous disease. The instructions of his Honor upon these two propositions contain nothing which requires elaborate discussion.

If there was any error, it was against the plaintiff, in his Honor's intimation that if the negligence of the plaintiff was equal to the negligence of the defendant he could recover nothing; whereas in such case the plaintiff would be entitled to the full amount of damages, less an allowance of one-half to be deducted on account of his contributory negligence. Or, as the defendant contends, the amount of such damages sustained by the plaintiff, if any, in the wreck should be "diminished" by one-half on account of the contributory negligence of the plaintiff, if it equaled the negligence of the defendant. The charge of the court on this point seems to have been partially if not completely cured by its further instruction. Of this instruction the defendant cannot complain and the plaintiff is not appealing.

No error.

WALKER, J., dissenting: I am of the opinion that there was substantial error in the trial of this case. Several errors are assigned which relate to the cause of action, that is, to the question of defendant's negligence, and they raise the question whether the court did not try the case by the old law or that which obtained before the passage of the Federal employers' liability act by Congress and the corresponding legislation in this State by our General Assembly (Public Laws 1913, ch. 6), under which contributory negligence was a complete defense and bar to a recovery of damages, while under these acts it goes merely in diminution of the damages. But I will pretermit any discussion of this serious question and pass to the principal exception argued before us, which was taken to these instructions of the court, not set forth fully in the opinion of the Court, and therefore reproduced here: "If you come to the question of damages, you will assess his reasonable damages under the rule which I have laid down, and then you will make an allowance for his own negligence and deduct that from his damages, if you find it was less than his damages. If you find it was equivalent, that would make his damages nothing; but if you find it was less—a reasonable allowance for his own negligence was less—than the amount of his own damages, you will deduct it and find the result."

After being out for some time, the jury returned to the courtroom for further instructions. One of the jurors said: "It seems that one or two of the jurors have understood it one way, and the others another. It seems that part of the jurors say that they understand from your charge that if they were equally negligent, that the plaintiff gets nothing."

The court thereupon gave the following instruction: "I don't think I would put it just that way, but this way: If you find that the plaintiff was injured by the negligence of the defendant under the charge I gave you, you will answer that 'Yes'; and if you find that the plaintiff was guilty of contributory negligence, as charged, you will answer that second issue 'Yes'; and then you will assess the damages that you find he is entitled to, and then deduct from that whatever amount you think would be proper for his contributory negligence. I perhaps did say that, if you find that his contributory negligence amounted to as much as the amount of damages, it would be nothing; but I did not put it that way—if they were equally negligent that he would be entitled to nothing. It would not be that. But you will deduct a reasonable amount from the damages that you think that he is entitled to from the damages, as an allowance for contributory negligence. It would be for you to say whether it is less or whether it is equal; but I did not put it just that way—that if they were equally guilty of negligence—but that you would just deduct from the amount you find he would be entitled to if he were not guilty of contributory negligence, a reasonable amount for contributory negligence. You would allow all that he would be entitled to for damages, and then, if you find that he was guilty of contributory negligence, you would make a reasonable allowance for whatever you think that would be equivalent to, and deduct that from the amount of damages."

Waiving the confusion in the last instruction, which is alleged by the appellant, and the clear error in the first one, I proceed to consider the correctness of the instruction given to the jury at their request, in explanation of the first and erroneous one. The appellant assigns the following specific errors to these instructions, which I think are well taken: (1) They lay down no rule for the guidance of the jury, but leave the matter subject entirely to the exercise of their discretion; (2) they do not conform to the directions of section 3 of the Federal employers' liability act; and (3) they do not contain the statement that the damages shall be diminished, but merely that the jury *would* deduct a reasonable amount for contributory negligence.

The jury answered the issue of negligence "Yes," the issue of contributory negligence "Yes," and the issue of damages "$7,000." What they found the total amount of damages to be does not appear and can-

not be determined. The answer to the issue, "$7,000," may be the remainder after deducting $10,000 or 10 cents, just as the jury may have found such amount to be a reasonable deduction for the contributory negligence. Or the jury could very readily have regarded the matter of making any deduction at all as within their discretion, and $7,000 may be their finding of the total damages sustained by the plaintiff. However that may be, the defendant was entitled to a correct instruction as to the effect of plaintiff's contributory negligence on the damages to which plaintiff would be entitled, and the failure to give a correct instruction would be such error as would entitle defendant to *a new trial of all the issues*. It would be impossible for another jury to pass upon the issue of damages alone, because it would be necessary to determine the relative negligence of defendant and plaintiff in order to measure the damages. Under the employers' liability act the issues of negligence and damages would seem to be inseparable, as each bears upon the other. The combined negligence of both parties must be compared with the negligence of each in order to apportion the damages, as the act requires the jury to do.

It is to be presumed that the jury would have been controlled by a correct instruction, and therefore there can be no presumption that the jury, by forming an estimate of a reasonable amount, arrived at the same or a smaller figure than they would have reached after considering the matter under a charge requiring them to diminish the damages in proportion to the amount of negligence attributable to the plaintiff.

If the charge of the court in this case is compared with the charge as approved by the United States Supreme Court in *N. and W. R. R. v. Earnest,* 229 U. S., 114, the error will become apparent. In that case *Mr. Justice Van Devanter* says: "The third section of the employers' liability act declares, subject to a proviso not material here, that 'the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee'; and in its charge the court dealt with the subject of contributory negligence as follows: 'Contributory negligence is the negligent act of a plaintiff which, concurring and coöperating with the negligent act of a defendant, is the proximate cause of the injury. If you should find that the plaintiff was guilty of contributory negligence, the act of Congress, under which this suit was brought, provides that such contributory negligence is not to defeat a recovery altogether, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee. So if you reach that point in your deliberations where you find it necessary to consider the defense of contributory negligence, the negligence of the plaintiff is not a bar to a recovery,

but it goes by way of diminution of damages in proportion to his negligence, as compared with the negligence of the defendant. If the defendant relies upon the defense of contributory negligence, the burden is upon it to establish that defense by a preponderance of the evidence.' " The learned justice (*Mr. Justice Van Devanter*) then proceeds to say that an exception to the instruction was reserved below, which was based upon the ground that the employers' liability act is unconstitutional, but that it was criticised in the higher court because it prescribed a wrong rule for the diminution, in that it directed or permitted it to be made upon a comparison of the plaintiff's negligence with that of the defendant; and in regard to this objection to it, he added: "The thought which the instruction expressed and made plain was that if the plaintiff had contributed to his injury by his own negligence, the diminution in the damages should be in proportion to the amount of his negligence. This was twice said, each time in terms readily understood. But for the use in the second instance of the additional words, 'as compared with the negligence of the defendant,' there would be no reason for criticism. Those words were not happily chosen, for to have reflected what the statute contemplates they should have read, 'as compared with the combined negligence of himself and the defendant.' We say this because the statutory direction that the diminution shall be 'in proportion to the amount of negligence attributable to such employee' means, and can only mean, that where the causal negligence is partly attributable to him and partly to the carrier, he shall not recover full damages, but only a proportional amount, bearing the same relation to the full amount as the negligence attributable to the carrier bears to the entire negligence attributable to both; the purpose being to abrogate the common-law rule completely exonerating the carrier from liability in such a case, and to substitute a new rule, confining the exoneration to a proportional part of the damages, corresponding to the amount of negligence attributable to the employee," and for this observation he cites the *Second Employers' Liability Cases,* decided formerly by that high and honorable Court (*Mondou v. N. Y., N. H. and H. R. R.,* 223 U. S., 1 [56 L. Ed., 346]; 38 L. R. A. [N. S.], 44). Another important case, directly in point and which condemns such an instruction as that given below in the trial of this action, is *R. R. v. Lindsay,* 34 Supr. Ct. Rep., 581, in which the same Court thus authoritatively states the true construction of the act and the law applicable to the assessment of damages under it. After the preliminary statement that a recovery is not prevented under the act by the plaintiff's contributory negligence, it proceeds to give the reasons for it in this language: "The statute substitutes for it a system of comparative negligence, *whereby the damages are to be diminished in the proportion which his negligence bears to the combined negligence of*

*himself and the carrier; in other words, the carrier is to be exonerated to the amount of negligence attributable to the employee,"* citing *N. and W. R. R. v. Earnest, supra.*

So we see that it is imperatively required by the act that its rule for the ·admeasurement of damages should be definitely stated to the jury, with proper explanation of its meaning, so that they may understand how to apply it. This was not done in the trial below. I attach no importance to the use of the words "deduct" or "deducted," instead of the words "diminish" or "diminished." That would be a mere play upon words; but that is not the error, as stated in the opinion of the Court, but the more serious one, that the rule of the act was not applied, or even stated at all, and certainly not explained to the jury. Even if the first instruction given by the court on this question had been correct—and it is far from being so—it surely was not explained enough and was clearly erroneous in one particular already shown, the second charge given (after the jury had returned to the courtroom for an explanation of the first one, and more definite instruction as to the damages) was not, by any means, a compliance with the rule of the statute, as it was left to the jury to deduct a reasonable or proper allowance for plaintiff's negligence without regard to the rule of proportion of the one party to the combined negligence of both, which is prescribed by the act of Congress. The jury were also told, in explaining the former error, that "You would first deduct from the amount you find he would be entitled to, if he were not guilty of contributory negligence, a reasonable amount for contributory negligence." Nor was the other branch of the instruction correct, viz.: "You would allow all that he would be entitled to for damages, and then, if you find that he was guilty of contributory negligence, you would make a reasonable allowance for whatever you think that would be equivalent to, and deduct that from the amount of damages." But in any view taken of this question in the case, the instructions, if not contradictory, were at least erroneous in part, and the jury not being able to distinguish between the right and the wrong instructions, the erroneous one is supposed to have been followed, and a new trial would result. This, I believe, is the rule in all courts. *Edwards v. R. R.,* 129 N. C., 78; *Tillett v. R. R.,* 115 N. C., 663; *Anderson v. Meadows,* 159 N. C., 406. In this kind of case the new trial must extend to all the issues.

I think my view of the statute and of the incorrectness of the charge of the court thereunder is fully sustained in *R. R. v. Hill,* 139 Ga., 549; *Neil v. R. R.,* 22 Idaho, 74. The question now presented has not been involved in any case heretofore considered by this Court, that I am aware of. We are bound by the decision of the highest Federal court as to the meaning and application of the act and its proper enforcement in actual practice, for it is a Federal question.

There are other errors assigned by defendant, as we have said, but it is not necessary that I should discuss them, as the one already considered is sufficient to reverse the judgment and demand a new trial of the case.

JUSTICE BROWN concurs in this dissenting opinion.