ANNIE COBIA, ADMX., v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 29 October, 1924.)

**1. Employer and Employee—Master and Servant—Assumption of Risks.**

The defense of a railroad company of assumption of risks rests in the actual or imputed knowledge of the employee of the dangers incident to the employment.

**2. Same—Independent Negligence.**

An injury independently caused to an employee by the negligent act of another, for which the employer is responsible, does not come within the principle of assumption of risks.

**3. Same—Burden of Proof.**

The fact of assumption of risks is one which the defendant must plead and prove; and upon evidence of the defendant's negligence the issue is for the jury.

**4. Same—Contributory Negligence.**

The doctrine of assumption of risks differs from that of contributory negligence, the former resting by contract and the latter consisting of a negligent act of the employee in respect to the cause of the damage, which he should not have committed in the exercise of ordinary care, under the circumstances, for his own safety.

**5. Same—Defenses—Comparative Negligence—Statutes.**

Contributory negligence is not a complete bar to the recovery of damages by an employee of a railroad company caused by the latter in inter-

state commerce, in an action brought under the Federal Employers' Liability Act, the admeasurement being that of comparative negligence by which the jury, under conflicting evidence, reduces the recovery in accordance with the relative negligence of the employee. Also, see C. S., 3467.

**6. Same—Measure of Damages—Federal Employers' Liability Act—Statutes.**

Where the plaintiff has brought an action against a railroad company for the negligent killing of her intestate, leaving a widow and children, under the Federal Employers' Liability Act, while engaged in interstate commerce, the measure of damages recoverable is limited to the present cash value, or present worth, or such loss as results to the beneficiaries, occasioned by their being deprived of a reasonable expectation of pecuniary benefit by the wrongful death of the employee; and while the statutory mortuary tables afford evidence of the expectancy of life of the deceased, the jury is not excluded from considering other evidence bearing thereon. The damages recoverable by the injured employee who survives, allowed by the Federal act, discussed by STACY, J.

**7. Appeal and Error—Instructions.**

An instruction to the jury will be construed contextually as a whole, on appeal, and if when so construed it is a correct exposition of the law upon the evidence, no error will be found because of disjointed parts thereof, which may have been erroneous when considered disconnectedly.

**8. Appeal and Error—Objections and Exceptions—Brief.**

Under the rule regulating appeals, errors assigned in the record will be deemed as abandoned if not mentioned in the brief of appellant.

APPEAL by defendant from *Calvert, J.,* at March Term, 1924, of NEW HANOVER.

Civil action, to recover damages for an alleged negligent injury, caused by defendant's wrongful act, and resulting in the death of plaintiff's intestate.

Upon denial of liability, and issues joined, the jury returned the following verdict:

"1. Was plaintiff's intestate killed by the negligence of the defendant, as alleged in the complaint? Answer: Yes.

2. Did plaintiff's intestate voluntarily assume the risks incident to performing the work which he was told to do, in the manner in which he undertook to do it? Answer: No.

3. Did plaintiff's intestate, by his own negligence, contribute to his injury? Answer: Yes.

4. What damages, if any, is plaintiff entitled to recover? Answer: $4,000."

Judgment on the verdict for plaintiff. Defendant appeals, assigning errors.

*Rodgers & Rodgers for plaintiff.*
*Rountree & Carr, Thomas W. Davis, and V. E. Phelps for defendant.*

STACY, J.   It was conceded on the trial that the defendant is a common carrier by railroad, engaged in interstate commerce, and that plaintiff's intestate was employed by the defendant in such commerce at the time of his injury and death.   The case, therefore, is one arising under the Federal Employers' Liability Act, and it has been properly tried under that act.   *Shanks v. Del. R. Co.,* 239 U. S., 556; *Capps v. R. R.,* 183 N. C., 181; *Renn v. R. R.,* 170 N. C., 128.   The deceased employee left a widow and three small children him surviving, and his administratrix, or personal representative, is prosecuting this suit on behalf of these persons, who fall in the first class of beneficiaries under the statute.   *Horton v. R. R.,* 175 N. C., 472; *Dooley v. R. R.,* 163 N. C., p. 463.

Plaintiff's intestate, Gus Cobia, was employed by the defendant as a hostler's assistant, to work around and about the engines in one of the railroad yards at Wilmington, N. C.   While in the discharge of his duties as such laborer he was killed, on 14 December, 1922, by falling or being precipitated into an ash-pit, just as he was preparing to open the ash-pan of engine No. 900, at the direction of John E. Eichorn, his immediate superior.   The injury occurred about 6:45 p. m., or fifteen minutes before the deceased would have quit work for the day.   It was dark at this time.   The pit was 50 feet long, 11 feet wide, and 13 feet deep.   It was filled with water, which may have been warm or hot, as the ash-pans of the engines were constantly being emptied into it. There was no covering or railing around the pit; and in the dim light and shadows, with ashes and coal dust floating upon the top of the water, it had the appearance of solid ground.

Eichorn, the hostler, told plaintiff's intestate to open the ash-pan on engine No. 900 before he pulled it over the pit with engine No. 339, to which it was attached.   The ash-pan is opened by a dump lever, which is on hinges and extends about 12 inches from the side of the pan.   It is necessary that this be opened before the engine is pulled over the pit. Cobia was on the opposite side of the engine from the pit when this instruction was given.   As the engine was headed north, it was necessary for him to cross over the track and get on the side of the engine next to the pit, in order to carry out the instruction of his hostler. Eichorn backed the engine (No. 900), so that Cobia could stand on the ground and open the pan, but in the darkness he apparently mistook the distance and did not have the engine as far from the pit as he thought.   Hence, when Cobia crossed over the track, climbing between the two engines, he stepped off into the pit and was drowned.

The negligence of the defendant is not seriously disputed, but it is earnestly contended that Cobia assumed the risk of his injury, being familiar with the situation, as he was, and having worked around the pit in question for some time—at least for a period of thirty days prior thereto. Defendant, therefore, insists that the action should be dismissed, as in case of nonsuit, and it should be held, as a matter of law, that plaintiff's intestate assumed the risk of his injury. In support of this position defendant relies chiefly upon the decision in *Glenn v. C. N. O. & P. T. R. Co.,* 163 S. W. (Ky.), 461, a case in many respects similar to the one at bar, but with this vital distinction or difference, namely, in the instant case Cobia did not know that Eichorn had failed to back the engine far enough for him to cross over the track in safety, while in the *Glenn case* no such circumstance or evidence appeared.

Knowledge is the watchword of the defense of assumption of risk—knowledge of the dangers and hazards to be encountered. *C. N. O. & T. P. Ry. Co. v. Thompson,* 236 Fed., p. 9. In *Chicago & E. R. Co. v. Ponn,* 191 Fed., 687, *Judge Hollister* says: "The only kind of knowledge which, on the ground of assumption of risk, will bar a recovery is actual (or constructive) knowledge."

Speaking to a similar question, in *Jones v. R. R.,* 176 N. C., p. 264, the present *Chief Justice* makes the following observation: "While the law in question (Federal Employers' Liability Act) clearly recognizes assumption of risk as a defense in certain instances, under section 4 such a position is absolutely inhibited in cases where the violation of a Federal statute, enacted for the protection of the employees, contributed to the injury or death of employee; and by correct deduction from the terms and meaning of section 1, making railroads engaged as common carriers of interstate commerce liable in damages for injuries or death caused by the negligence of their officers, agents, or employees, the negligence of fellow-servants is withdrawn from the class of assumed risks in cases of unusual and instant negligence, and under circumstances which afforded the injured employee no opportunity to know of the conditions or appreciate the attendant dangers. This doctrine of assumption of risk is based upon knowledge or a fair and reasonable opportunity to know, and usually this knowledge and opportunity must 'come in time to be of use.' 26 Cyc., p. 1202, citing 160 Ind., p. 583."

Again, in *Chesapeake & Ohio Ry. v. De Atly,* 241 U. S., 311, it is said: "An employee is not bound to exercise care to discover extraordinary dangers arising from the negligence of the employer or of those for whose conduct the employer is responsible, but may assume that the employer or his agents have exercised proper care with respect to his safety until notified to the contrary, unless the want of care and the

danger are so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate them."

By the common law, the employee assumes the risks normally incident to the occupation in which he voluntarily engages; other and extraordinary risks, and those due to the employer's negligence, he does not assume until made aware of them, or until they become so obvious and immediately dangerous that an ordinarily prudent man would observe and appreciate them; in either or both of which cases he does assume them if he continue in the employment, without objection or without obtaining from the employer an assurance that the matter will be remedied; but if he receive such an assurance (the dangers being both obvious and imminent), then, pending the performance of the promise, the employee, in ordinary cases, does not assume the special risk. Of course, if the dangers be so *imminent* that no ordinarily prudent man, under the circumstances, would rely upon such promise, then he would assume the risk, even pending the performance of· such promise. *N. Y. C. R. Co. v. White,* 238 U. S., 507; *Seaboard v. Horton,* 233 U. S., 492; *Gila Valley, etc., Ry. v. Hall,* 232 U. S., 94; *Gaddy v. R. R.,* 175 N. C., 515.

In *Horton v. R. R.,* 175 N. C., 472, the difference in principle between assumption of risk, which arises out of contract, and contributory negligence, which arises out of tort, is stated as follows: "Assumed risk is founded upon the knowledge of the employee, either actual or constructive, of the risks to be encountered, and his consent to take the chance of injury therefrom. Contributory negligence implies misconduct, the doing of an imprudent act by the injured party, or his dereliction in failing to take proper precaution for his personal safety. The doctrine of assumed risk is founded upon contract, while contributory negligence is solely a matter of conduct." See, also, upon this subject, *Cincinnati N. O. & T. P. Ry. Co. v. Thompson,* 236 Fed., 1 (opinion by *Judge Cochran*); *Chicago & E. R. Co. v. Ponn,* 191 Fed., 682 (opinion by *Judge Hollister*); *Narramore v. Cleveland C. C. & St. L. Ry. Co.,* 96 Fed., 298 (opinion by *Judge Taft*); *St. Louis Cordage Co. v. Miller,* 126 Fed., 495 (opinion by *Judge Sanborn*).

Under the facts of the present case, we think the question of assumption of risk was properly left to the jury, as this is a matter which the defendant must plead and prove. *Lloyd v. R. R.,* 166 N. C., 24; *Dorsett v. Mfg. Co.,* 131 N. C., p. 261.

"In a clear case the question of assumption of risk by the employee is one of law for the court, but where there is doubt as to the facts or as to the inferences to be drawn from them, it becomes a question for the jury. To preclude a recovery on that ground, it must appear that the employee knew and appreciated, or should have known and appreciated,

the danger to which he was exposed, and in case of. doubt that is for the jury. . . . The burden of proof as to the assumption of risk is upon the defendant; and where there is any doubt as to the facts, or inferences to be drawn from them, the question is for the jury." *Walling, J.,* in *Falyk v. Penn. R. R. Co.,* 100 Atl. (Pa.), 961.

In *Kanawha & M. R. Co. v. Kerse,* 239 U. S., 581 (60 L. Ed., 448), it was held that the trial court should not be charged with error in refusing to take the question of assumption of risk from the jury in an action under the Federal Employers' Liability Act, unless the evidence, tending to show such assumption of risk came from unimpeached witnesses, was clear and free from contradiction.

The next assignment of error, strongly relied upon by the defendant, and which we have experienced some difficulty in arriving at a satisfactory conclusion as to what disposition should be made of it, is the exception directed to the following portion of the charge:

"The measure of damage is the present cash value of the future benefits of which the beneficiaries, widow and children of the deceased, were deprived by his death, making adequate allowance, according to the circumstances, for the earning power of money. The measure of damages, then, is the present value of the net pecuniary worth of the deceased, to be ascertained by deducting the cost of his own living and expenditures from the gross income, based upon his life expectancy. As a basis on which to enable the jury to make their estimate, it is competent to show, and for you to consider, the age of the deceased, his prospects in life, his character, his industry and skill, the ability he had of making money, the business in which he was employed—the end of it all being to enable the jury to fix upon that net income which might be reasonably expected if death had not ensued, and thus arrive at the pecuniary worth of the deceased to his family. In arriving at his life expectancy, you will consider the mortuary tables that have been called to your attention, but you are not bound by them."

This instruction, standing alone, would seem to fall under the objection pointed out in *Gerow v. R. R., ante,* 76. But in at least two other places in the charge, just before and after the above excerpt, his Honor instructed the jury, and reiterated the statement, that the action was brought for the benefit of the widow and children, and that the damages should be limited to the present cash value of such benefits as the widow and children had lost, or might reasonably expect to lose, on account of the death of the deceased. Taking the charge in its entirety, we are constrained to believe that the above excerpt, which forms the basis of one of defendant's exceptions, should not be held for reversible error on the present record. It is now settled law that the charge of

the court must be considered and examined by us, not disconnectedly, but as a whole, or at least the whole of what was·said regarding any special phase of the case or the law. The losing party will not be permitted to select detached portions of the charge, even if in themselves subject to criticism, and assign errors as to them, when, if considered with other portions, they are readily explained and the charge in its entirety appears to be correct. Each portion of the charge ·must be considered with reference to what precedes and follows it. In other words, it must be taken in its setting. The charge should be viewed contextually and not disjointedly. Any other rule would be unjust, both to the trial judge and to the parties. *Exum v. Lynch, ante,* 392.

The rule for the admeasurement of damages for wrongful death, in cases arising under the Federal Employers' Liability Act, differs according to the relation between the parties for whose benefit the action is brought and the deceased employee, "according as the action is brought for the benefit of the husband, wife, minor child or parent of minor child, for the loss of services or support to which the beneficiary was legally entitled, or is brought for the benefit of a person whose damages consist only in the loss of a prospective benefit to which he was not legally entitled." *Michigan Central R. Co. v. Vreeland,* 227 U. S., 59.

Under our statute (C. S., 160), giving a right of action for wrongful death, the damages are based upon the present worth of the net pecuniary value of the life of the deceased (*Horton v. R. R.,* 175 N. C., 477), while under the Federal Employers' Liability Act the damages recoverable are based upon the pecuniary loss sustained by the beneficiaries. The measure of such damages, under the Federal statute, is what the beneficiaries named in the statute, or any of them, and no one else, necessarily lose, in or by the death of the plaintiff's intestate; and in ascertaining these damages the jury is at liberty to take into consideration the age, health, and expectancy of life of the deceased, his earning capacity, his mode of treatment to his family, .and the amount contributed out of his wages to their support, and calculate from these facts the amount the beneficiaries have lost, or may reasonably expect to lose, on account of the death of the deceased. *Irvin v. R. R.,* 164 N. C., 5.

The damages recoverable are limited ·to the present cash value, or present worth, of such loss as results to the beneficiaries, occasioned by their being deprived of a reasonable expectation of pecuniary benefit by the wrongful death of the injured employee. The amount is limited to the financial loss thus sustained. *Chesapeake & Ohio Ry. v. Kelly,* 241 U. S., 485; *Dooley v. R. R.,* 163 N. C., 463.

In *Nashville, etc., R. Co. v. Anderson,* 134 Tenn., 666, a case arising under the Federal Employers' Liability Act, it was held that the dam-

ages to be awarded in favor of a widow and minor children should include such sum as the widow might reasonably expect to receive from her husband for support, and such a sum as the children might reasonably expect to receive from their father for support during their minority.

On 5 April, 1910, Congress amended the act in question by adding the following section:

"Sec. 9. That any right of action given by this act to a person suffering injury shall survive to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee, and, if none, then of such employee's parents, and, if none, then of the next of kin dependent upon such employee; but in such cases there shall be only one recovery for the same injury."

No change was made in section 1, which is, in part, as follows:

"Every common carrier by railroad, while engaging in commerce between any of the several States or Territories, . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee, and, if none, then of such employee's parents, and, if none, then of the next of kin dependent upon such employee, for such injury or death, resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, road-bed, works, boats, wharves, or other equipment."

It will be observed that this first section provides for two distinct rights of action—one arising to the injured employee to compensate him for his personal loss and suffering, where the injuries are not immediately fatal; and the other to his personal representative for the pecuniary loss sustained by the designated relatives, where the injuries immediately or ultimately result in death. Without abrogating or curtailing either right of action, the new section (9) provides in terms that the right given to the injured person "shall survive" to his personal representative "for the benefit of" the same relatives in whose behalf the other right of action is given in section 1. *St. Louis & Iron Mt. Ry. v. Craft,* 237 U. S., 648.

In the last case just cited it was held that, under the Federal Employers' Liability Act, as amended in 1910, the personal representative of a fatally injured employee might recover the pecuniary loss resulting to the beneficiaries, and also for the pain and suffering endured by the deceased from the time of receiving the fatal injuries to the moment of final dissolution. "But, to avoid any misapprehension," the Court was

careful to say, "it is well to observe that the case is close to the border line, for such pain and suffering as are substantially contemporaneous with death, or mere incidents to it, as also the short periods of insensibility which sometimes intervene between fatal injuries and death, afford no basis for a separate estimation or award of damages under statutes like that which is controlling here." And, further referring to the two separate grounds of recovery: "Although originating in the same wrongful act or neglect, the two claims are quite distinct, no part of either being embraced in the other. One is for the wrong to the injured person, and is confined to his personal loss and suffering before he died, while the other is for the wrong to the beneficiaries and is confined to their pecuniary loss through his death. One begins where the other ends, and a recovery upon both in the same action is not a double recovery for a single wrong, but a single recovery for a double wrong."

This matter is of no special moment here, but it may be well not to overlook it in dealing with some of our former decisions on the subject. For this reason, attention is called to the amendment, because, in this respect, as in others, the Federal law is different from the State law. *Bolick v. R. R.,* 138 N. C., 370. In the present case plaintiff's intestate was killed almost instantly, and the circumstances here disclosed afford no basis for an estimation or award of damages in addition to the pecuniary loss resulting to the beneficiaries through the death of the deceased. *Great Northern Ry. Co. v. Capitol Trust Co.,* 242 U. S., 144.

Where the issue of contributory negligence is answered in favor of the defendant and against the plaintiff, as it is here, and the negligence of the defendant does not consist in the violation of any law of Congress enacted for the safety of employees, the doctrine of comparative negligence is to be applied in the assessment of damages. *Davis v. R. R.,* 175 N. C., 648. The Federal statute expressly provides: "The fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee," etc.

In identical language, our State statute (C. S., 3467) also provides: "In all actions hereafter brought against any common carrier by railroad to recover damages for personal injury to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: *Provided, however,* that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by

such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

So, under both statutes, Federal and State, in actions brought by employees or their personal representatives against common carriers by railroad, to recover damages for personal injuries to the employee, or where such injuries have resulted in death, the negligence of the plaintiff or of the deceased employee is not a bar to a recovery, but it goes by way of diminution of damages in proportion to the negligence of the employee, as compared with the combined negligence of himself and the defendant; or, in other words, the carrier is to be exonerated to the amount of the causal negligence attributable to the employee. That is to say, if the carrier and the employee should both be found guilty of negligence in an equal degree, which contributed to the injury—the negligences being equal—the jury should reduce the damages one-half. If it should be found that the employee was guilty of more negligence than the railroad company, then the damages should be diminished more than one-half. If it should be found that the employee was guilty of less negligence than the defendant company, then the damages should not be reduced as much as one-half. *Irvin v. R. R.,* 164 N. C., 14. Or, to state it differently: When the causal negligence is partly attributable to the injured employee and partly attributable to the defendant carrier, the plaintiff cannot recover full damages, or all the damages sustained by the employee or his beneficiaries, but only a proportional or fractional part thereof. The amount which the plaintiff may recover is to bear the same ratio, or proportion, to the full amount of damages sustained as the negligence attributable to the defendant bears to the entire negligence, or combined negligences, attributable to both. It is the purpose of both statutes to abrogate the common-law rule, completely exonerating the defendant from liability in such a case, and to substitute a new rule, confining the exoneration to a proportional part of the damages, corresponding to the amount of negligence attributable to the employee. *Mondou v. N. Y. R. Co.,* 223 U. S., 1; *Tilghman v. R. R.,* 167 N. C., 171; *Renn v. R. R.,* 170 N. C., 128; *Kenney v. R. R.,* 165 N. C., 99.

A careful examination of the remaining exceptions leaves us with the impression that they should be resolved in favor of the validity of the trial and that such can be done without violating any legal principle.

The record presents no prejudicial or reversible error, hence the verdict and judgment will be upheld.

No error.